Maulin V. Shah (#256443)
maulin.shah@envisionip.com

ENVISION IP L.L.C.
1345 Avenue of the Americas
2nd Floor
New York, NY 10105
Telephone:  888.307.6807
Facsimile:   646.200.5227

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANOLABS, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>      vs.<br><br>COINBASE GLOBAL, INC., a Delaware corporation,<br><br>          Defendant. | Case No. 3:23-cv-844<br><br>**COMPLAINT**<br><br>**1. FEDERAL REGISTERED TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**<br>**2. FEDERAL FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**<br>**3. CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT (Cal. Bus. & Prof. Code § 14200 *et seq.*)**<br>**4. UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200 *et seq.*)**<br>**5. INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiff NanoLabs, Inc. ("Plaintiff"), by and through its attorneys, files this Complaint ("Complaint") against Defendant Coinbase Global, Inc., alleging as follows:

## PARTIES

1. Plaintiff is a Delaware corporation that maintains the Nano digital currency (the "Nano Digital Currency"). The Nano Digital Currency is used globally for instant, secure feeless payments. Plaintiff has a decentralized structure with physical offices and staff in London, United Kingdom, and community ambassadors, moderators, and community managers throughout the world, including in the United States.

2. Coinbase Global Inc. ("Coinbase") is a Delaware corporation, having a principal place of business at 548 Market St., San Francisco, California 94104.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, in that this action arises under Acts of Congress relating to trademarks, and the claims for California common law trademark infringement, unfair competition, and conversion under state law are joined with substantial and related claims brought under the federal trademark laws.

2. This court likewise has diversity jurisdiction under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different countries in that Plaintiff has its principal place of business in London, United Kingdom, Defendant Coinbase has its principal place of business in the state of California.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to the claim occurred in this district and that Defendants are subject to the court's subject matter and/or personal

jurisdiction with respect to this action as indicated in the preceding paragraphs.

## FACTUAL BACKGROUND

4. The Nano Digital Currency was founded by Mr. Colin LeMahieu in 2014 as a decentralized, sustainable, and secure digital currency focused on addressing the inefficiencies present in existing financial systems, namely high transaction fees and latency.

5. The Nano Digital Currency was originally named RaiBlocks, and was rebranded to Nano on January 31, 2018.

6. Since at least as early as January 31, 2018, Plaintiff has used the trademark Nano in U.S. commerce in connection with its digital currency, and the Nano Digital Currency has been marketed continuously in commerce throughout the United States.

7. On February 2, 2018, the Nano Digital Currency had a market capitalization of over $2 billion.

8. The Nano Digital Currency is currently one of the top 200 digital currencies tracked by CoinMarketCap.

9. Plaintiff has expended significant resources in marketing its digital currency, and the Nano Digital Currency has been the subject of numerous third-party media and press publications since its rebranding on January 31, 2018.

10. Attached as **Exhibits A through G** are true and correct copies of the publications and press referred to in Paragraph 9.

11. Given the extensive third-party press and media coverage of the Nano Digital Currency, Plaintiff has acquired tremendous goodwill in the Nano trademark and brand.

12. There are approximately 26 million wallets globally for the Nano Digital Currency.

13. Plaintiff has an office in London, United Kingdom, has a robust online presence, and utilizes community ambassadors, moderators, and community managers throughout the United States, as well as throughout the world (see **Exhibit H**).

14. Millions of wallet owners for the Nano Digital Currency from across the United States have successfully utilized Plaintiff's digital currency as a method of payment for goods and services.

15. Plaintiff has over 300,000 community members in its various online social network channels who are devoted to promoting and expanding the reach and adoption the Nano Digital Currency. **Exhibit I** is listing of each of these social network channels and the respective number of community members for each.

16. Plaintiff has invested significant time, effort, and expense in advertising, marketing, and promoting the Nano trademark and has enjoyed significant consumer recognition and goodwill as a result.

17. Plaintiff promotes its digital currency through its website at www.nano.org as shown in **Exhibit J**.

18. Plaintiff's digital currency is available for trading on numerous leading digital currency exchanges, as list of which is provided in **Exhibit K**.

19. On October 17, 2018, Defendant Coinbase Global Inc. sent an unsolicited email to Plaintiff stating: "Our team is researching for new coins and tokens for listing on our exchange and we would like to propose you adding NANO for trading on the platform. We offer listing against BTC, USD, EUR and/or GBP pairs." (see **Exhibit L**).

20. On or around September 2021, Plaintiff applied to have the Nano Digital Currency listed on the Coinbase exchange trading platform ("Coinbase Exchange").

21. On September 7, 2021, Mr. Zach Segal, the Head of Listings at Coinbase, sent an email to George Coxon, Plaintiff's Director, forwarding a prior

COMPLAINT
CASE NO. 3:23-CV-844

1  internal email discussion within Coinbase regarding a custody deposit which
2  would be required by Plaintiff in order to have the Nano Digital Currency listed on
3  the Coinbase Exchange. (see **Exhibit M**).

4  22.  On September 14, 2021, the Coinbase Listing Team at Coinbase,
5  acknowledged Plaintiff's application to have the Nano Digital Currency listed on
6  the Coinbase Exchange via email, as shown in **Exhibit N**.

7  23.  On September 19, 2021, Ms. Coxon participated in an virtual panel
8  entitled "Communicating Crypto in 2021" alongside Mr. Elliot Suthers, the
9  Corporate and Global Communications Director for Coinbase. A screenshot from
10 this panel is provided as **Exhibit O**, and the full panel can be viewed here:
11 https://www.youtube.com/watch?v=s_2Pdfw1niA.

12 24.  On March 8, 2022, Ms. Allie Heinrichs, a Senior Associate on the
13 Coinbase Listing Team, emailed Plaintiff regarding the "Earn" program offered by
14 Coinbase, as shown in **Exhibit P**.

15 25.  Thus, since at least October 17, 2018, various department heads and
16 directors, as well as associates, in various departments at Coinbase were familiar
17 with the Nano Digital Currency.

18 26.  As the steward of the Nano Digital Currency, Plaintiff has committed
19 years of effort and expense to develop grow the good will associated with, an
20 establish a reputation for integrity, efficiency, and security in, the Nano Digital
21 Currency.

22 27.  Plaintiff's continuous and exclusive use of the Nano trademark and
23 the intellectual property associated therewith resulted in generating goodwill and
24 consumer recognition in connection with the Nano Digital Currency throughout
25 the United States.

26 28.  Consumers therefore recognize the Nano Digital Currency as a
27 reliable and trusted peer-to-peer digital currency that facilitates payment
28 transactions.

**PLAINTIFF'S TRADEMARKS**

29. Plaintiff is the owner of a federal trademark registration for NANO under United States Trademark Registration No. 6,203,002 covering "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," in Class 36, registered on November 24, 2020 (the "002 Registration").

30. A true and correct copy of the Certificate of Registration for the '002 Registration is attached as **Exhibit Q**.

31. The application for the '002 Registration was originally filed by NanoLabs, LLC, and was assigned to Mr. LeMahieu on January 4, 2018. Mr. LeMahieu, as the founder of the Nano Digital Currency, and as a Director of Plaintiff, gave Plaintiff a license to the '002 Registration. On September 14, 2022, '002 Registration was assigned by Mr. LeMahieu to Plaintiff. (see **Exhibit R**).

32. Plaintiff's '002 Registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of [Plaintiff's] ownership of the mark, and of the [Plaintiff's] exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate . . ." pursuant to 15 U.S.C. § 1057.

33. Plaintiff's '002 Registration was filed before and registered before any use of the word "Nano" by Defendant.

34. Plaintiff also owns the following allowed, pending federal trademark applications, all incorporating the word "Nano":

    a. Trademark Application No. 87/726,750 NANO COIN for "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols,

operating through the Internet, and used as a method of payment for goods and services," in Class 36; and

b. Trademark Application No. 87/726,759 for NANO CURRENCY for "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," in Class 36.

35. In addition to the trademark applications and registrations referenced above, Plaintiff owns strong common law rights in and to the word "Nano" and a Nano stylized trademark for use in connection with a digital currency. A version of the Nano stylized trademark is shown below:

⨉ NANO

36. Plaintiff's registered, pending, and common law trademarks are collectively referred to herein as the "Nano Marks."

37. Plaintiff further owns registered trademarks for Nano in Class 36 in Algeria, the African Intellectual Property Organization member states, Canada, Colombia, the European Union, India, Indonesia, Kazakhstan, the Republic of Korea, Monaco, Norway, New Zealand, Oman, the Russian Federation, Singapore, Ukraine, and the United Kingdom.

38. As a result of Plaintiff's extensive use of its Nano Marks, the trademark has become uniquely associated with Plaintiff.

39. The Nano Marks are inherently distinctive, and Plaintiff's use of its Nano Marks pre-dates Defendants' confusingly similar use of the word "Nano" for its Nano Bitcoin futures ("Nano Bitcoin") digital currency offering.

40. The Nano Marks are inherently distinctive, and Plaintiff's use of its Nano Marks pre-dates Defendants' confusingly similar use of the word "Nano" for its Nano Ether futures ("Nano Ether") digital currency offering.

**DEFENDANTS' INFRINGING TRADEMARKS AND ACTIVITIES**

41. Defendants launched its Nano Bitcoin digital currency offering on June 27, 2022, years after Plaintiff had been in business and had been using its Nano Marks (see **Exhibit S**).

42. Defendants launched Nano Bitcoin years after Plaintiff had been in business and had been using its Nano Marks, and less than four months after Coinbase and Plaintiff last discussed the possibility of having the Nano Digital Currency listed on the Coinbase Exchange.

43. Defendants launched its Nano Ether digital currency offering on August 29, 2022, years after Plaintiff had been in business and had been using its Nano Marks (see **Exhibit T**).

44. Defendants were on at least constructive notice of Plaintiff's registered rights as a result of Plaintiff's registrations and open use of its marks as early as January 31, 2018.

45. Defendants advertise their Nano Bitcoin and Nano Ether offerings through www.coinbase.com/derivatives as shown in **Exhibit U**, which is the website for Defendants' derivatives exchange (the "Coinbase Derivatives Exchange").

46. Defendants, in their marketing materials, refers to their offerings as Nano, Nano Bitcoin, Nano Bitcoin futures, Nano Ether, Nano Ether futures, and Coinbase Nano Bitcoin Futures (collectively, the "Nano Bitcoin and Ether Marks") as shown in **Exhibit U**.

47. Defendants' Nano Bitcoin and Nano Ether offerings are derivative products based on the digital currencies Bitcoin and Ether, respectively, which are identical or highly similar types of offerings as Plaintiff's digital currency.

48. Defendants target the same type of consumers that Plaintiff markets its digital currency to in connection with the Nano Marks—those seeking to invest in, and utilize, a digital currency.

49. Notwithstanding Defendants' actual or at least constructive notice of Plaintiff's rights, Defendants have adopted trademarks that are identical, and where not identical, are confusingly similar to Plaintiff's.

50. Plaintiff and Defendants' marks are compared below:

| Plaintiff's Trademark Use | Defendants' Trademark Use |
| --- | --- |
| (i) Nano | (i) Nano, (ii) Nano Bitcoin, (iii) Nano Bitcoin futures, (iv) Coinbase Nano Bitcoin Futures, (v) Nano Ether, (vi) Nano Ether futures |
| Earliest use date: 2018 | Earliest use date: 2022 |

51. Defendants did not begin using the Nano Bitcoin and Ether Marks on or in connection with any goods or services until June 27, 2022, several years after Plaintiff had established its Nano Marks and related goodwill in the Nano Digital Currency.

52. In fact, since the time Defendants began using the Nano Bitcoin and Ether Marks on June 27, 2022 on its own Coinbase Derivatives Exchange, Defendants willfully expanded visibility and access to its Nano Bitcoin and Nano Ether offering by allowing various third-party retail brokers and clearing firms to list the Nano Bitcoin – namely EdgeClear, Ironbeam, NinjaTrader, Optimus Futures, Stage 5, and Tradovate, ABN AMRO, ADMIS, Advantage Futures,

Dorman Trading, ED&F Man, and Wedbush (see **Exhibits S & T**). Such aggressive expansion exposes a significant number of consumers to Nano Bitcoin and Nano Ether, who are likely to believe that Defendants' offerings originate from, or is affiliated or associated with Plaintiff, or is otherwise sponsored or endorsed by Plaintiff.

53. Defendants' will likely continue to aggressively market its Nano Bitcoin and Nano Ether offerings. In July 2022, third-party media reported that Defendants "saw a 'surge in activity ever since retail broker partners started marketing/ promotional efforts last week,' according to an email sent out by Coinbase's sales team." (see **Exhibit V**).

54. Defendants' offering of digital currencies so similar to, and under an identical mark, has harmed Plaintiff.

55. Defendants are not in any way affiliated with Plaintiff, have used the Nano Marks without authorization, without Plaintiff's consent, and have therefore interfered with Plaintiff's prospective economic advantage as a result of its dealings with retail brokers, clearing firms, as well as digital currency exchanges, while infringing Plaintiff's rights.

56. Defendants' continued use of the Nano Marks and branding efforts related to Nano Bitcoin and Nano Ether will confuse consumers. Defendants' continued efforts to trade off Plaintiff's goodwill will continue to cause Plaintiff harm.

## FIRST CAUSE OF ACTION

**(Federal Trademark Infringement [Lanham Act, 15 U.S.C. § 1114)])**

57. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 56, inclusive, and incorporates them as though fully set forth by this reference herein.

58. Defendants' use in commerce of words, terms, names, symbols, or devices, or any combination thereof, consisting of or including the word "Nano", and/or derivatives thereof constitutes a colorable imitation of Plaintiff's Nano Marks, and is likely to cause confusion, or to cause mistake, or to deceive. As such, Defendants' use of the Nano Bitcoin and Ether Marks constitutes an infringement of Plaintiff's trademarks.

59. Defendants' infringing actions are intentional and willful, as Defendants first adopted their Nano Bitcoin and Ether Marks with actual notice of Plaintiff's Nano Marks, and expanded their uses of the Nano Bitcoin and Ether Marks with actual knowledge of Plaintiff's Nano Marks.

60. Defendants' acts of infringement have caused and are causing actual damage and irreparable harm to Plaintiff, for which legal remedies are inadequate. Therefore, in addition to monetary remedies, Plaintiff seeks injunctive relief to permanently bar Defendants from use of word "Nano", the Nano Marks, the Nano Bitcoin and Ether Marks, and any confusingly similar marks in commerce in connection with their products, services, or offerings.

61. Defendants' intentional actions are willful and render this an exceptional case, further entitling Plaintiff to recovery of trebled damages, attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**(False Designation of Origin [Lanham Act, 15 U.S.C. § 1125(a)])**

62. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 61, inclusive, and incorporates them as though fully set forth by this reference herein.

63. In addition to its federally registered trademarks, Plaintiff is the owner of common law rights for the word "Nano" and the Nano Marks.

64. Defendants' use in commerce of words, terms, names, symbols, or devices, or any combination thereof, consisting of or including the confusingly similar word "Nano", and/or variations thereof is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff.

65. Defendants' use of the Nano Bitcoin and Ether Marks are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff.

66. Defendants' use of the Nano Marks in advertising and branding is a blatant attempt to capitalize on the goodwill established by Plaintiff.

67. Defendants' infringing actions are intentional and willful, as Defendants adopted the word "Nano" and the Nano Bitcoin and Ether Marks with actual notice of Plaintiff's use of Nano and the Nano Marks, and then expanded their uses of the Nano Bitcoin and Ether Marks with actual knowledge of Plaintiff's Nano Marks.

68. Defendants' acts of infringement have caused and are causing actual damage and irreparable harm to Plaintiff, for which legal remedies are inadequate. Therefore, in addition to monetary remedies, Plaintiff seeks injunctive relief to permanently bar Defendants from use of the word "Nano", the Nano Marks, the Nano Bitcoin and Ether Marks, and any confusingly similar marks in commerce in connection with their products, services, or offerings.

COMPLAINT
CASE NO. 3:23-CV-844

69. Defendants' intentional actions are willful and render this an exceptional case, further entitling Plaintiff to recovery of trebled damages and its attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (California Common Law Trademark Infringement)

70. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 69, inclusive, and incorporates them as though fully set forth by this reference herein.

71. As alleged in detail above, Defendants' use of the word "Nano" and the confusingly similar Nano Bitcoin and Ether Marks in the state of California constitutes an infringement of Plaintiff's trademark rights. Moreover, Defendants' willful conduct was committed knowingly and willfully, thereby justifying an award of exemplary damages in addition to Plaintiff's actual damages.

## FOURTH CAUSE OF ACTION

### (Unfair Business Practices [Cal. Bus. & Prof. Code § 17200 et seq.])

72. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 71, inclusive, and incorporates them as though fully set forth by this reference herein.

73. As alleged in detail above, Defendants' use and advertising of the word "Nano" and the confusingly similar Nano Bitcoin and Ether Marks in the state of California without authorization, constitutes unlawful, unfair, or fraudulent business acts or practices within the meaning of California Business and Professions Code Section 17200.

74. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' unfair competition in the form of damage to its goodwill, lost consumer adoption, loss of its intellectual property and other actual damages.

75. The harm to Plaintiff and to members of the general public outweighs the utility of Defendants' business practices.

76. The unlawful, unfair, and fraudulent business practices of Defendants, as described in this Complaint, present a continuing threat to members of the public in that they are likely to cause confusion as to the source of Defendants' digital currency offering in that the general public is likely to believe that Defendants' digital currency offering originates from, or is affiliated or associated with Plaintiff, or are otherwise sponsored or endorsed by Plaintiff.

77. As a direct and proximate result of Defendants' wrongful acts as alleged in this Complaint, Defendants obtained unlawful profits to the detriment of Plaintiff.

78. Unless restrained, Defendants will continue the acts and conduct set forth in this cause of action, to Plaintiff's great and irreparable injury, for which damages will not afford adequate relief. Plaintiff is therefore entitled to an injunction prohibiting Defendants' wrongful acts.

79. Defendants committed the wrongful acts willfully, intending to gain business and a share of the market by riding on Plaintiff's reputation and good will. Defendants' conduct justifies an award of exemplary damages.

80. Upon proof, Plaintiff is entitled to recover its costs, including attorneys' fees, under California Code of Civil Procedure Section 1021.5.

## FIFTH CAUSE OF ACTION

**(Interference with Prospective Economic Relations)**

81. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 80, inclusive, and incorporates them as though fully set forth by this reference herein.

82. Upon information and belief, Defendants knew or should have known that launching a digital currency offering on the Coinbase Derivatives Exchange with an identical name likely will result or would have resulted in a future economic detriment to Plaintiff, as Coinbase had previously denied Plaintiff's application to list the Nano Digital Currency on the Coinbase Exchange.

83. Defendants knew or should have known that offering Nano Bitcoin on the Coinbase Derivates Exchange would only further consumer confusion and weaken the strength of Plaintiff's brand identity, particularly because the Nano Digital Currency is not listed on the Coinbase Exchange, and Defendants' provide no disclaimer, distinction, or otherwise to educate consumers to this point.

84. Defendants engaged in wrongful conduct through trademark infringement, false designation of origin, and unfair competition activities.

85. As a result of Defendants' wrongful conduct and interference, Plaintiff was harmed. Plaintiff is therefore entitled to money damages plus prejudgment interest and costs of suit, as well as an injunction to restrain Defendants from future interference with economic relations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court enter judgment against Defendants as follows:

1. For an award of actual damages according to proof, but in no event less than $5,000,000.00;

2. For disgorgement of Defendants' profits;

3. For reasonable attorney's fees and costs of suit;

4. For pre-judgment interest on all amounts claimed as permitted by law;

5. For an order of permanent injunction, enjoining Defendant from using the word "Nano", the Nano Marks, the Nano Bitcoin and Ether Marks, or any confusingly similar trademarks, tradenames, or domain names that include the word "Nano", or any confusingly similar mark or variation in connection with the offering, sale, exchange, or trading of a digital currency.

7. For an order impounding for destruction all products, brochures, marketing materials, and other articles bearing the Nano Bitcoin and Ether Marks;

8. For an order requiring Defendants to engage in corrective advertising to restore, to the fullest extent possible, the value of NanoLabs' intellectual property;

9. For punitive damages; and

10. For such other, further, and different relief as the Court may deem proper under the circumstances.

Dated: February 20, 2023                    ENVISION IP L.L.C.

By: /s/ *Maulin V. Shah*
Maulin V. Shah
Envision IP, LLC
1345 Avenue of the Americas
2nd Floor
New York, NY 10105
maulin.shah@envisionip.com
888-307-6807
Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues raised in the Complaint.

Dated: February 24, 2023                    ENVISION IP L.L.C.


By: /s/ *Maulin V. Shah*
Maulin V. Shah
Envision IP, LLC
1345 Avenue of the Americas
2nd Floor
New York, NY 10105
maulin.shah@envisionip.com
888-307-6807
Attorney for Plaintiff