1  GINA DURHAM, Bar No. 295910
   *gina.durham@us.dlapiper.com*
2  AISLINN N. SMALLING, Bar No. 335911
   *aislinn.smalling@us.dlapiper.com*
3  **DLA PIPER LLP (US)**
   555 Mission Street, Suite 2400
4  San Francisco, CA 94105-2933
   Tel:    415.836.2500
5  Fax:    415.836.2501

6  KRISTINA FERNANDEZ MABRIE, Bar No. 318315
   *kristina.fernandezmabrie@us.dlapiper.com*
7  **DLA PIPER LLP (US)**
   2000 Avenue of the Stars, Suite 400 North Tower
8  Los Angeles, CA 90067-4704
   Tel:    310.595.3077
9  Fax:    310.595.3377

10 *Attorneys for Defendant*
   *Coinbase Global, Inc.*

11              **UNITED STATES DISTRICT COURT**
12             **NORTHERN DISTRICT OF CALIFORNIA**

13 NANOLABS, INC., a Delaware corporation,        Case No.  3:23-cv-844

14         Plaintiff,                             **DEFENDANT COINBASE GLOBAL**
                                                  **INC.'S ANSWER TO PLAINTIFF'S**
15         v.                                     **COMPLAINT FOR FEDERAL**
                                                  **TRADEMARK INFRINGEMENT, FALSE**
16 COINBASE GLOBAL, INC., a Delaware              **DESIGNATIONS OF ORGIN, AND**
   corporation,                                   **CALIFORNIA COMMON LAW**
17                                                **TRADEMARK INFRINGEMENT, UNFAIR**
           Defendant.                             **COMPETITION OF UNFAIR BUSINESS**
18                                                **PRACTICES, AND INTERFERENCE**
19                                                **WITH PROSPECTIVE ECONOMIC**
                                                  **RELATIONS AND DEFENDANT'S**
20 COINBASE GLOBAL, INC., a Delaware              **COUNTERCLAIMS**
   corporation,
21
           Counterclaimant,
22                                                **JURY TRIAL DEMANDED**
23         v.

24 NANOLABS, INC., a Delaware corporation

25         Counterdefendant.

26

27

28

A
ANSWER AND COUNTERCLAIMS
CASE NO. 3:23-CV-844

**Error! Unknown document property name.**

Defendant and Counterclaimant Coinbase Global, Inc., a Delaware corporation ("Coinbase")[1], through its undersigned counsel, hereby answers and asserts affirmative defenses to the Complaint for Federal Trademark Infringement, Federal False Designation of Origin, California Common Law Trademark Infringement, and Unfair Competition and Unfair Business Practices ("Complaint")[2] of Plaintiff NanoLabs, Inc. ("NanoLabs"), dated February 24, 2023. ECF No. 1. Coinbase's answers and affirmative defenses are based on information and knowledge thus far secured by Coinbase, and Coinbase reserves the right to amend or supplement its answers and affirmative defenses based on facts later discovered, pleaded, or offered. The numbered paragraphs below correspond to the numbered paragraphs in the Complaint. To the extent that any express or implied allegations in the Complaint are not specifically admitted herein, Defendant hereby denies such allegations.

## PARTIES

1.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 1 of the Complaint, and therefore denies those allegations.

2.      Coinbase admits it is a Delaware corporation. Coinbase denies the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

1.      Coinbase admits that the Court has subject matter jurisdiction over the claims asserted in the First through Fourth Causes of Complaint but denies that the Complaint includes a claim for conversion.

---

[1] Plaintiff names one defendant in the caption and the section of the Complaint discussing the "parties," but, at various places throughout the Complaint, refers to "Defendants." It appears that the pluralization of "Defendants" is a typographical error. Coinbase assumes for purposes of its Answer that "Defendants" refers to the nominative defendant, Coinbase Global, Inc. Coinbase Global, Inc. notes, however, that it is not the operating entity for its derivatives exchange. In 2014, Coinbase Global, Inc. was incorporated as a Delaware corporation to act as the holding company of several Coinbase subsidiaries. LMX Labs, LLC dba Coinbase Derivatives Exchange operates the derivatives exchange.

[2] Coinbase has filed concurrently with this answer a partial motion to dismiss asserting that Count Five of the Complaint for Tortious Interference with Prospective Economic Relations must be dismissed for failure to state a claim pursuant to Fed. R. of Civ. Pro. 12(b)(6).

DLA PIPER LLP (US)
SAN FRANCISCO

1

ANSWER AND COUNTERCLAIMS
CASE NO. 3:23-CV-844**Error! Unknown document property name.**

2.      Coinbase denies that diversity jurisdiction exists as both parties are incorporated in Delaware.

3.      Coinbase does not contest personal jurisdiction or venue for purposes of this case. Coinbase lacks sufficient knowledge or information to form a belief as to the allegation that "a substantial part of the events giving rise to the claim occurred in this district" and therefore denies this allegation.

**FACTUAL BACKGROUND**

4.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 4 of the Complaint, and therefore denies those allegations.

5.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 5 of the Complaint, and therefore denies those allegations.

6.       Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 6 of the Complaint, and therefore denies those allegations.

7.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 7 of the Complaint, and therefore denies those allegations.

8.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 8 of the Complaint, and therefore denies those allegations.

9.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 9 of the Complaint, and therefore denies those allegations.

10.      Coinbase admits Exhibits A through G of the Complaint appear to be publications of some sort, but Coinbase lacks sufficient knowledge or information to admit or deny what exactly is contained in Exhibits A though G, and therefore denies the allegations set forth in Paragraph 10.

11.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 11 of the Complaint, and therefore denies those allegations.

12.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 12 of the Complaint, and therefore denies those allegations.

13.      Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 13 of the Complaint, and therefore denies those allegations.

2

14.     Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 14 of the Complaint, and therefore denies those allegations.

15.     Coinbase admits Exhibit I of the Complaint appears to show a selection of social network channels. Except as otherwise admitted, Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 15 of the Complaint, and therefore denies those allegations.

16.     Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 16 of the Complaint, and therefore denies those allegations.

17.     Coinbase admits Exhibit J of the Complaint appears to be a selection of pages from a website. Except as otherwise admitted, Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 17 of the Complaint, and therefore denies those allegations.

18.     Coinbase admits Exhibit K of the Complaint appears to be a selection of pages from a website. Except as otherwise admitted, Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 18 of the Complaint, and therefore denies those allegations.

19.     Denied.

20.     Denied.

21.     Paragraph 21 contains a summary of Exhibit M. Coinbase admits that Exhibit M appears to be a September 7, 2021 email exchange that occurred between a Coinbase entity and Nanolabs.  Exhibit M speaks for itself.

22.     Coinbase admits that Paragraph 22 appears to paraphrase portions of Exhibit N. Coinbase lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 22, and therefore denies those allegations.

23.     Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 23 of the Complaint, and therefore denies those allegations.

////

////

3

24.     Coinbase admits that Paragraph 24 appears to paraphrase portions of Exhibit P. Coinbase lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 24, and therefore denies those allegations

25.     Denied.

26.     Paragraph 26 contains legal contentions that need not be admitted or denied. To the extent a response is required, Coinbase denies all material allegations set forth in paragraph 26.

27.     Paragraph 27 contains legal contentions that need not be admitted or denied. To the extent a response is required, Coinbase denies all material allegations set forth in paragraph 27.

28.     Paragraph 28 contains legal contentions that need not be admitted or denied. To the extent a response is required, Coinbase denies all material allegations set forth in paragraph 28.

### PLAINTIFF'S TRADEMARKS

29.     Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 29 of the Complaint, and therefore denies those allegations.

30.     Coinbase admits Exhibit Q appears to be a copy of a trademark registration certificate. Except as otherwise admitted, Coinbase denies the allegations set forth in Paragraph 30 of the Complaint.

31.     Coinbase admits Exhibit R of the Complaint appears to be a copy of a trademark assignment agreement. Except as otherwise admitted, Coinbase denies the allegations set forth in Paragraph 31 of the Complaint.

32.     Denied.

33.     Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 33 of the Complaint, and therefore denies those allegations.

34.     Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 34 of the Complaint, and therefore denies those allegations.

35.     Coinbase denies that NanoLabs "owns strong common law rights in and to the word 'Nano' and a Nano stylized trademark for use in connection with a digital currency." Coinbase lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth

in Paragraph 35 of the Complaint, and therefore denies those allegations.

36.    This paragraph defines a term and does not require an answer. To the extent an answer is needed, Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 36 of the Complaint, and therefore denies those allegations.

37.    Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 37 of the Complaint, and therefore denies those allegations.

38.    Denied.

39.    Denied.

40.    Denied.

### DEFENDANT'S INFRINGING TRADEMARKS AND ACTIVITIES

41.    Coinbase admits that LMX Labs, its subsidiary, made its nano size Bitcoin futures contract available for trading on June 27, 2022. Coinbase admits Exhibit S of the Complaint speaks for itself. Coinbase denies that nano size Bitcoin futures contracts are digital currency and denies the remaining allegations in Paragraph 41 of the Complaint.

42.    Denied.

43.    Coinbase admits that LMX Labs, its subsidiary, made its nano size Ether futures contract available for trading on its derivative exchange on August 29, 2022. Coinbase admits Exhibit T of the Complaint speaks for itself.  Coinbase denies that nano size Ether futures contracts are digital currency and denies the remaining allegations in Paragraph 43 of the Complaint.

44.    Denied.

45.    Coinbase admits Exhibit U of the Complaint appears to contain selected pages from a Coinbase website. Coinbase denies the remaining allegations in Paragraph 45 of the Complaint.

46.    Coinbase admits Exhibit U contains selected website pages, which describe certain future contract sizes as "nano." Coinbase denies the remaining allegations in Paragraph 46 of the Complaint.

47.    Denied.

48.    Denied.

49.    Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Coinbase admits Plaintiff is not affiliated with Coinbase, or its subsidiaries, and denies the remaining allegations in Paragraph 55 of the Complaint.

56.     Denied.

<u>**FIRST CAUSE OF ACTION**</u>

**Federal Trademark Infringement [Lanham Act, 15 U.S.C. § 1114]**

57.     Coinbase incorporates by references its responses to Paragraphs 1 through 56 of the Complaint as if set forth fully herein.

58.     Denied.

59.     Denied.

60.     Paragraph 60 of the Complaint contains legal conclusions to which no response by Coinbase is required. To the extent a response is required, Coinbase denies the allegations of Paragraph 60 of the Complaint and denies that NanoLabs is entitled to any recovery or relief.

61.     Paragraph 61 of the Complaint contains legal conclusions to which no response by Coinbase is required. To the extent a response is required, Coinbase denies the allegations of Paragraph 61 of the Complaint and denies that NanoLabs is entitled to any recovery or relief.

<u>**SECOND CAUSE OF ACTION**</u>

**False Designation of Origin [Lanham Act, 15 U.S.C. § 1125(a)]**

62.     Coinbase incorporates by references its responses to Paragraphs 1 through 61 of the Complaint as if set forth fully herein.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

6

67.    Denied.

68.    Denied.

69.    Paragraph 69 of the Complaint contains legal conclusions to which no response by Coinbase is required. To the extent a response is required, Coinbase denies the allegations of Paragraph 69 of the Complaint and denies that NanoLabs is entitled to any recovery or relief.

**THIRD CAUSE OF ACTION**

**California Common Law Trademark Infringement**

70.    Coinbase incorporates by references its responses to Paragraphs 1 through 69 of the Complaint as if set forth fully herein.

71.    Paragraph 71 of the Complaint contains legal conclusions to which no response by Coinbase is required. To the extent a response is required, Coinbase denies the allegations of Paragraph 71 of the Complaint and denies that NanoLabs is entitled to any recovery or relief.

**FOURTH CAUSE OF ACTION**

**Unfair Business Practices [Cal. Bus. & Prof. Code § 17200 et esq.]**

72.    Coinbase incorporates by references its responses to Paragraphs 1 through 71 of the Complaint as if set forth fully herein.

73.    Paragraph 73 of the Complaint contains legal conclusions to which no response by Coinbase is required. To the extent a response is required, Coinbase denies the allegations of Paragraph 73 of the Complaint.

74.    Coinbase lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 74 of the Complaint, and therefore denies those allegations.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

79.    Paragraph 79 of the Complaint contains legal conclusions to which no response by Coinbase is required. To the extent a response is required, Coinbase denies the allegations of Paragraph 79 of the Complaint and denies that NanoLabs is entitled to any recovery or relief.

7

1    80.    Paragraph 80 of the Complaint contains legal conclusions to which no response by

2    Coinbase is required. To the extent a response is required, Coinbase denies the allegations of

3    Paragraph 80 of the Complaint and denies that NanoLabs is entitled to any recovery or relief.

4                                    **FIFTH CAUSE OF ACTION**

5                    **Interference with Prospective Economic Relations**

6    81.    Coinbase addresses the Fifth Cause of Action in its concurrently filed Motion to

7    Dismiss, and therefore, no answer is required.

8    82.    Coinbase addresses the Fifth Cause of Action in its concurrently filed Motion to

9    Dismiss, and therefore, no answer is required.

10   83.    Coinbase addresses the Fifth Cause of Action in its concurrently filed Motion to

11   Dismiss, and therefore, no answer is required.

12   84.    Coinbase addresses the Fifth Cause of Action in its concurrently filed Motion to

13   Dismiss, and therefore, no answer is required.

14   85.    Coinbase addresses the Fifth Cause of Action in its concurrently filed Motion to

15   Dismiss, and therefore, no answer is required.

16                                      **PRAYER FOR RELIEF**

17   Coinbase denies the allegations in Paragraphs 1 through 10 in the "Prayer for Relief" section

18   of the Complaint. Coinbase further denies that Plaintiff is entitled to any of the relief that it seeks

19   through the Complaint.

20                                          **DEFENSES**

21   As affirmative, separate, and other defenses to the Complaint asserted against Coinbase,

22   Coinbase states as follows, without assuming the burden of proof on matters where it has no such

23   burden. In doing so, Coinbase specifically reserves the right to restate, re-evaluate, or recall any

24   defenses and to assert additional defenses based on information learned or obtained during

25   discovery.

26                          **First Defense – Failure to State a Claim**

27   The Complaint fails to state a claim upon which relief may be granted.

28

**Second Defense – Nano is Descriptive**

Plaintiff's claims are barred in whole or in part, because "nano" is descriptive for the goods and services it offers. Plaintiff's proposed use for its digital currency is in connection with microtransactions, and "nano" like "micro" is another way to describe something that is small in size. Plaintiff has not built up the necessary goodwill to established secondary meaning in this descriptive terminology. Therefore, "nano" does not function as a trademark for Plaintiff, Plaintiff has no exclusive rights in or to "nano" that can be enforced against Coinbase, and Plaintiff's Nano Registration should be cancelled.

**Third Defense – Fair Use**

Plaintiff's claims are barred because the use of the term "nano" to describe the size of a futures contract is a classic fair use. As Plaintiff's own exhibit to its Complaint shows, the use of the term is to describe the size of futures contracts, not just for cryptocurrency, but also as a size option for Bloomberg US Large Cap Index contracts, and SuperTech contracts. *See* Complaint, Ex. U. Under the Lanham Act, 15 U.S.C. § 1115(b)(4), a party makes fair use where (1) the term is not used as a trademark, (2) the term is "used fairly and in good faith," and (3) the term is used to describe the party's goods.

Here, all three elements are met. As indicated, the use of the term "nano" is not as a trademark but for its commonly understood meaning. In this case, "nano" is used in good faith to describe size. As evidenced by the exhibits to the Complaint, the term "nano" is used, along with "micro", to describe the size of various futures contracts offered. Because the term "nano" is fairly used to describe products, fair use serves as a complete affirmative defense to Plaintiff's claims of infringement.

**Fourth Defense – Unclean Hands**

Some or all of the relief sought by Plaintiff is barred under the doctrine of unclean hands in that NanoLabs has engaged in inequitable behavior, including bad faith, related to the subject matter of its claims.

In particular, Plaintiff is misusing a trademark registration in an attempt to monopolize and/or wrongly restrict use of a common word in the English language.

9

1        Upon information and belief, Plaintiff's intention is to derive economic benefit by using a

2   trademark registration to preclude accurate descriptions of size, which is not the proper use for a

3   trademark registration.

4   **Fifth Defense – Acquiescence**

5        Plaintiff's claims against Coinbase are barred, in whole or in part, by the equitable doctrine

6   of acquiescence, based on Plaintiff's conduct, including Plaintiff's prior non-objection to use of the

7   allegedly infringing mark, which conduct was prejudicial to Coinbase.

8   **Sixth Defense – Failure to Mitigate**

9        Plaintiff's claims are barred, in whole or in part, because NanoLabs failed to mitigate any

10   alleged injury or damages suffered by NanoLabs, if any.

11   **Additional Defenses**

12        Coinbase reserves the right to assert additional defenses based on information learned or

13   obtained during discovery.

14        WHEREFORE, for the foregoing reasons Coinbase respectfully requests that this Court

15   dismiss this action in its entirety, with prejudice; that Coinbase be awarded its attorney's fees and

16   costs; and that Coinbase be awarded such further relief as this Court deems just and proper.

17

18

19

20

21

22

23

24

25

26

27

28

## COUNTERCLAIMS AGAINST PLAINTIFF

Pursuant to Federal Rule of Civil Procedure 13, Counterclaimant Coinbase Global, Inc. ("Coinbase") asserts the following counterclaims against Counter Defendant NanoLabs, Inc. ("NanoLabs") and, by and though its counsel, alleges as follows:

### PARTIES

1.      Counterclaimant Coinbase Global, Inc. is a Delaware corporation with a place of business at 248 3rd Street #434 Oakland, California 94607.

2.      Upon information and belief, Counter Defendant NanoLabs Inc., is a Delaware corporation, with a principal place of business in London, United Kingdom.

### JURISDICTION AND VENUE

3.      These Counterclaims arise under the Lanham Act, 15 U.S.C. § 1051 et seq.

4.      This Court has jurisdiction over the subject matter of these counterclaims under 15 U.S.C. §§ 1060 and 1121 and 28 U.S.C. §§ 1331, 1338.

5.      This court has personal jurisdiction over NanoLabs because by filing the Complaint in this judicial district, NanoLabs has submitted to this Court's jurisdiction over NanoLabs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. 1391 because, by filing its Complaint in this judicial district, NanoLabs has consented that this Court is a proper venue for this action.

### FACTUAL BACKGROUND

7.      In February 2022, Coinbase acquired LMX, Labs, LLC dba FairX, a CFTC-registered contract market (a "DCM"). Following the acquisition, LMX Labs, LLC was rebranded as Coinbase Derivatives Exchange. As a DCM, this entity facilitates the trading of futures contracts by market participants.

8.      Prior to its acquisition by Coinbase, LMX Labs, LLC listed futures contracts referencing the SuperTech Index, Crude Oil and Bloomberg U.S. Large Cap Equities. These contracts were offered in "micro" and "nano" size, allowing investors to choose the appropriate-sized contract to speculate on the future of the underlying reference asset.

9.      Coinbase Derivatives Exchange continues to use terms like "micro" and "nano" to describe the size of futures contracts.

////

10.     NanoLabs, claims that it is the owner of trademark rights in "Nano" which it associates with a digital currency used for microtransactions, that was originally called "RaiBlocks."

11.     NanoLabs cites to its purported trademark rights in challenging use of the term "nano" to describe the size of certain small-sized futures contracts offered listed for trading on the Coinbase Derivatives Exchange.

***Nano is a Descriptive Term Used to Indicate the Size of a Financial Product***

12.     Because "nano" is descriptive, referring to a quality (the size) of a product or service, no one should have the right to monopolize the term and prevent others from accurately describing their products or services.

13.     Nano is defined as "extremely small." **Exhibit A**.

14.     The word "nano is commonly used descriptively in the financial sphere to indicate the size of an offering. Just a brief, non-exhaustive internet search, reveals the following co-existing uses of "nano" to mean "small" to describe the size of a product or offering in the investment field:

    a.  Nano Cap: a small publicly traded company with a market capitalization of less than $50 million. **Exhibit B**.

    b.  Nano Credit: small loans. **Exhibit C**.

    c.  Nano Finance: small loans. **Exhibit D**.

    d.  Nanopayments: small payments. **Exhibit E**.

15.     Even Nano Lab's own use of nano is descriptive. Upon information and belief, NanoLabs' "nano" currency is used for small-sized transactions:



ANSWER AND COUNTERCLAIMS
CASE NO. 3:23-CV-844

16.     Upon information and belief, NanoLabs' proposed use for its digital currency is in connection with microtransactions, and "nano" like "micro" is another way to describe something that is small in size.

17.     As such, "nano" describes a function of Plaintiff's digital currency in this case as opposed to serving as a unique source identifier for the currency.

18.     NanoLabs has not built up the necessary goodwill to establish secondary meaning in this descriptive terminology.

19.     Because "nano" does not function as a trademark for NanoLabs, Plaintiff has no exclusive rights in or to "nano" that can be enforced against Coinbase.

20.     NanoLabs' attempt to control use of the descriptive term "nano" in the financial space harms Coinbase by preventing it and/or its subsidiaries from accurately describing its products.

21.     NanoLabs should not be entitled to monopolize a common term by registering it as trademark when NanoLabs' use is to describe a quality, characteristic, function, feature, purpose, or use of its product.

***Nano Labs' Registrations***

22.     If NanoLabs' trademark filings were not already invalid because of the failure of a descriptive term like "nano" to function as a trademark, NanoLabs' own activities with regards to its trademark applications and registrations have further invalidated its filings made with the United States Patent & Trademark Office ("USPTO").

23.     Specifically, NanoLabs' activities before the USPTO blatantly violate the anti-trafficking rule articulated in Section 10(a)(1) of the Lanham Act, 15 U.S.C. § 1060(a)(1), which states that no application is assignable before "filing of an amendment" to allege use or "the filing of the verified statement of use" unless the application is assigned to a business successor or the business to which the application pertains is ongoing.

24.     All of NanoLabs' trademark filings which encompass the "nano" term were assigned in violation of this rule, thereby causing the filings to be invalidated.

25.     NanoLabs, LLC filed for trademark applications for the following marks on December 19, 2017 on an intent to use basis:

     a.  NANO (Reg. No. 6203002/Serial No. 87,726,733) covering "cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating

13

cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services" in Class 36.

    b.  NANO COIN (Serial No. 87,726,750), covering "cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," in Class 36.

    c.  NANO CURRENCY (Serial No. 87,726,759), covering "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," in Class 36.

26.    Applications filed on an intent to use basis are those where the applicant does not yet show the use required to establish trademark rights under Section 1 of the Lanham Act. 15 U.S. Code § 1051.

27.    On January 4, 2018, NanoLabs LLC assigned the three applications for NANO (Reg. No. 6,203,002/Serial No. 87,726,733), NANO COIN (Serial No. 87,726,750), and NANO CURRENCY (Serial No. 87,726,759) to Mr. Colin LeMahieu. At the time of the assignment, all three applications remained filed on an intent-to-use basis, and there was no use in commerce. *See* **Exhibit F**.

28.    Upon information and belief, none of the marks in the assigned applications were in use at the time of the assignment as NanoLabs admits that it did not begin its use of NANO until January 31, 2018, when NanoLabs rebranded its product from RAIBLOCK to NANO. Complaint ¶ 5; **Exhibit G**.

29.    Similarly, upon information and belief, Mr. LeMahieu later assigned all of these filings, along with another intent to use application for NANO FOUNDATION (Serial No. 87,760,251) to NanoLabs Inc. **Exhibit H**.

30.    Under the Lanham Act, any assignment of trademarks must also include the goodwill of the business, with a specific prohibition on the assignment of intent to use applications. *See* Lanham Act, § 10(a)(1), 15 U.S.C. § 1060(a)(1).

31.    Because both NanoLabs and Mr. LeMahieu assigned all of the various filings before there was any use of the marks designated in the filings, and before any evidence of use was submitted to the USPTO, upon information and belief, both parties assigned these filings without any goodwill of the business, thereby violating US trademark law.

32.     As a result of this conduct, and subject to the Anti-trafficking rule, the three intent-to-use applications (NANO COIN, NANO CURRENCY, and NANO FOUNDATION) and the registration for NANO are void and cannot be asserted against Coinbase as prima facie evidence of any trademark rights owned by NanoLabs.

**FIRST COUNTERCLAIM FOR RELIEF**

*Cancellation of U.S. Trademark NANO Registration No. 6203002 for Descriptiveness*

33.     Counterclaimant re-alleges each and every allegation set forth in Paragraphs 1 through 32, inclusive, and incorporates them as though fully set forth by this reference herein.

34.     The word "nano" is commonly understood to mean "very small."

35.     "Nano" has been used in the financial field to describe the size of the feature or function of financial products including contracts, loans, and payments.

36.     "Nano" does not serve as a unique indicator of source when its use describes the quality, characteristic, function, feature, purpose, or use of goods and services in the financial space, and NanoLabs has not established that the mark has achieved secondary meaning necessary to support registration of an inherently descriptive mark.

37.     NanoLabs was granted U.S. registration for NANO (Reg. No. 6203002) to cover digital currency and payment transactions, but registration should not have been granted because "nano" merely describes the micro and/or small nature of these services.

38.     Any trademark rights that NanoLabs' claims in "nano" should be declared invalid as "nano" is merely descriptive and does not serve as a trademark for the goods and services offered by NanoLabs.

39.     Further, a party who believes the continued registration of a mark damages them may request the cancellation of that registration within five years from the registration date, in this case November 24, 2020. *See* Lanham Act § 14(1), 15 U.S.C. § 1064(1).

40.     Under the Lanham Act, 15 U.S.C. §§ 1052(3), 1119, this Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register to cancel the aforementioned U.S. trademark registration on the grounds that the registration is descriptive and lacks secondary meaning.

////

////

////

### SECOND COUNTERCLAIM FOR RELIEF

*Invalidation of U.S. Trademark Registration No. 6203002 and Application Nos. 87726750, 87726759, and 87760251 Based on the Violation of the Anti-Trafficking Rule.*

41.     Counterclaimant re-alleges each and every allegation set forth in Paragraphs 1 through 40, inclusive, and incorporates them as though fully set forth by this reference herein.

42.     Upon information and belief, on January 4, 2018, NanoLabs LLC assigned its three intent-to-use applications (NANO, NANO COIN, and NANO CURRENCY) to Mr. LeMahieu, nearly a month before it launched the rebrand from Raiblock to NANO.

43.     Because NanoLabs did not rebrand its Raiblock cryptocurrency until January 31, 2018, NanoLabs was not making any bona fide use in commerce of NANO, NANO COIN, or NANO CURRENCY at the time of the assignment, so there was no goodwill to transfer with the marks.

44.     Similarly, when Mr. LeMahieu assigned the trademark registration for NANO, and the trademark applications for NANO COIN, NANO CURRENCY, and NANO FOUNDATION to NanoLabs, Inc., Mr. LeMahieu had yet to file Statement of Use for NANO COIN, NANO CURRENCY and NANO FOUNDATION. Therefore, Mr. LeMahieu transferred these three marks without the associated goodwill of the business.

45.     Today, NanoLabs has still not perfected use.

46.     Under the Lanham Act, no application is assignable before "filing of an amendment" to allege use or "the filing of the verified statement of use" unless the application is assigned to a business successor or the business to which the application pertains is ongoing. 15 U.S.C. § 1060(a)(1).

47.     Given that the re-brand did not occur until after the first assignment and Mr. LeMahieu was not a successor to the business, there is no exception to permit these assignments. *See* Complaint ¶¶ 5, 31.

48.     Accordingly, all four marks NANO, NANO COIN, NANO CURRENCY, and NANO FOUNDATION were impermissibly assigned as intent to use applications.

49.     Pursuant to the Lanham Act, 15 U.S.C. §§ 1060(a)(1), 1119, this Court has jurisdiction to order the USPTO to make appropriate entries on the Federal Register to cancel the U.S. trademark registration for NANO (Reg. No. 6203002) on the grounds that the mark was impermissibly transferred as an intent to use application, absent any goodwill of the business, and as such, is invalid.

50.    This Court should also declare that the U.S. trademark applications for NANO COIN (Serial No. 87726750), NANO CURRENCY (Serial No. 87726759), and NANO FOUNDATION (Serial No. 87760251) are invalid on the grounds that the marks were impermissibly transferred as intent to use applications, absent any goodwill of the business.

## PRAYER FOR RELIEF

WHEREFORE, Coinbase respectfully requests that the Court grant the following relief:

1.    Enter a judgment declaring that NANO is descriptive for financial services that are small in size or have an intended use that is small in size, and therefore does not function as a trademark for NanoLabs;

2.    Enter an order directing the Director of the United States Patent & Trademark Office to cancel U.S. Registration number 6,203,002, because the mark is descriptive, and does not have the required secondary meaning;

3.    Enter an order directing the Director of the United States Patent & Trademark Office to cancel U.S. Registration number 6,203,002, because the mark was assigned prior to filing at Statement of Use, so the registration is invalid.

4.    Enter a judgment finding that U.S. trademark application numbers 87,726,750, 87,726,759, and 87,760,251 are invalid under the Anti-Trafficking Rule because these applications were assigned as intent to use applications, before the prior owner filed any Statements of Use.

5.    Enter an award of Coinbase's attorney's fees and costs; and

6.    Enter any and all such other and further relief as the Court deems just and proper.

Dated:  May 18, 2023

**DLA PIPER LLP (US)**

By: */s/ Gina Durham*

GINA DURHAM
AISLINN N. SMALLING
KRISTINA M. FERNANDEZ MABRIE

*Attorneys for Defendant/Counterclaimant*
*Coinbase Global, Inc.*

17

1

<u>**DEMAND FOR JURY TRIAL**</u>

2          Defendant/Counterclaimant Coinbase Global, Inc. demands a trial by jury as to all issues so

3    triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

4

Dated:  May 18, 2023

5
                                                          **DLA PIPER LLP (US)**
6

7

8                                             By:   */s/ Gina Durham*
                                                   _____
9                                                  GINA DURHAM
                                                   AISLINN N. SMALLING
10                                                 KRISTINA M. FERNANDEZ MABRIE

11                                                 *Attorneys for Defendant/Counterclaimant*
                                                   *Coinbase Global, Inc.*
12

13

14

15

16   WEST/302715470

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)
SAN FRANCISCO

18

ANSWER AND COUNTERCLAIMS
CASE NO. 3:23-CV-844