GINA L. DURHAM (SBN 295910)
*gina.durham@us.dlapiper.com*
AISLINN SMALLING (SBN 335911)
*aislinn.smalling@us.dlapiper.com*
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415-836-2506
Fax: 415-659-7333

KRISTINA FERNANDEZ MABRIE (SBN 318315)
*kristina.fernandezmabrie@us.dlapiper.com*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Tel.:    (310) 595-3000

Attorneys for Defendant
COINBASE GLOBAL, INC.

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANOLABS, INC., a Delaware corporation,<br><br>                                Plaintiff,<br><br>     v.<br><br>COINBASE GLOBAL, INC., a Delaware corporation<br><br>                                Defendant. | Case No. 3:23-cv-844<br><br>**DEFENDANT COINBASE GLOBAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS NANOLABS, INC.'S FIFTH CAUSE OF ACTION UNDER FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: July 14, 2023<br>Time: 9:30 a.m.<br>Courtroom:  F<br>Judge: Joseph C. Spero<br><br>Complaint Filed: February 24, 2023 |

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2023, at 9:30 a.m., or as soon after as this matter may be heard, before the Honorable Joseph C. Spero in Courtroom F, 15th Floor, of this Court located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Coinbase Global, Inc. ("Defendant" or "Coinbase") will and hereby does move to dismiss Plaintiff NanoLabs, Inc.'s ("Plaintiff" or "NanoLabs") fifth cause of action for interference with prospective economic relations.

Coinbase brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to state a claim for interference with prospective economic relations against Coinbase. The motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the Proposed Order submitted herewith, all other pleadings and papers on file in this action, and any oral argument that the Court may permit.

# TABLE OF CONTENTS

I. ISSUES TO BE DECIDED AS TO COINBASE (CIV.L.R. 7-4(A)(3)) .............................. 2

II. INTRODUCTION ................................................................................................................ 2

III. PLAINTIFF'S ALLEGATIONS ........................................................................................ 4

IV. LEGAL STANDARD .......................................................................................................... 5

V. ARGUMENT ........................................................................................................................ 6

    A. NanoLabs' Complaint Fails to State a Cognizable Claim for Relief for Interference with Prospective Economic Relations. ........................................................................ 6

        1. NanoLabs Has Not Identified Any Specific Economic Relationships That Had the Probability of a Future Economic Benefit. ..................................... 7

        2. NanoLabs Does Not Sufficiently Allege Coinbase's Knowledge of Any Specific Prospective Economic Relations. ..................................................... 9

        3. NanoLabs Does Not Sufficiently Allege Intent ......................................... 10

        4. NanoLabs' Harm Is Speculative and Insufficient to State a Claim............. 10

VI. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................................. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 3, 5, 6, 7

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983) ................................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 3, 5, 6, 9

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
    No. C 03-05340 JF, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005) ........................................... 8

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ................................................................................... 7

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ................................................................................... 7

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ................................................................................................... 6

*Nestle USA, Inc. v. Crest Foods, Inc.*,
    No. LACV1607519JAKAFMX, 2017 WL 3267665 (C.D. Cal. July 28, 2017) ...................... 7

*Schloss v. Sick Optic-Elec., Inc.*,
    No. CIV. C 96-20236 SW, 1997 WL 487428 (N.D. Cal. Aug. 8, 1997) ................................. 8

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ............................................................................... 3, 9, 10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................................... 6

*Sybersound Recs., Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ............................................................................................ 3, 10

*Vascular Imaging Pros., Inc. v. Digirad Corp.*,
    401 F. Supp. 3d 1005 (S.D. Cal. 2019) ........................................................................ 3, 7, 10

*W. Min. Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) .......................................................................................... 6

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ........................................................................................ 6

**California Cases**

*Blank v. Kirwan*,
  39 Cal. 3d 311 (1985) ................................................................................................. 7, 8

*Diodes, Inc. v. Franzen*,
  260 Cal. App. 2d 244 (1968) ........................................................................................ 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ........................................................................................... 6, 10

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) .................................................................................................. 7

*Roth v. Rhodes*,
  25 Cal. App. 4th 530 (1994) ......................................................................................... 11

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
  2 Cal. 5th 505 (2017) ..................................................................................................... 6

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) ...................................................................................... 7, 8

*Worldwide Com., Inc. v. Fruehauf Corp.*,
  84 Cal. App. 3d 803 (Cal. Ct. App. 1978) .................................................................... 11

*Youst v. Longo*,
  43 Cal. 3d 64 (1987) .................................................................................................... 11

**Federal Statutes**

GINA l. ................................................................................................................................. 11

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 6

Federal Rule of Civil Procedure 12(b)(6) .................................................................... 1, 2, 5

Federal Rule 12(b)(6) ............................................................................................................ 5

L.R. 7-4(A)(3) ........................................................................................................................ 2

Rule 12(b)(6) .......................................................................................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.     ISSUES TO BE DECIDED AS TO COINBASE (CIV.L.R. 7-4(A)(3))**

1.     Should NanoLabs' fifth cause of action for interference with prospective economic relations be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)?

**II.    INTRODUCTION**

This is a case about a trademark dispute. The Complaint is lacking any allegation which would morph it into a case about tortious interference.

In essence, Plaintiff's lawsuit challenges use of the term "nano" to describe the smallest in a range of small-sized futures contracts offered through a derivatives exchange operated by one of Defendant's subsidiaries. Plaintiff's Complaint asserts four different causes of action for trademark infringement to attack this use. Not content to stop there, Plaintiff strains to fashion its allegations into a fifth claim-- for interference with prospective economic relations.

Defendant has concurrently filed an answer denying Plaintiff's claims that sound in trademark infringement because use of terms like "nano" and "micro" to describe things that are small in size does not violate the law, regardless of whether Plaintiff can validly claim any trademark rights (which it cannot). The threshold defects in Plaintiff's fifth claim are so severe, however, that they require dismissal from this lawsuit at the pleading stage.

Defendant Coinbase's operating companies offer a range of technology platforms that allow businesses and individuals to participate in financial markets.[1] For example, Coinbase Inc. has an exchange platform where individuals can trade different types of crypto. LMX Labs, LLC dba Coinbase Derivatives Exchange also operates solutions for businesses such as its derivates exchange which is registered with the Commodity Futures Trading Commission ("CFTC") and designed for

---

[1] Coinbase Global, Inc. was incorporated as a Delaware corporation in 2014 to act as the holding company for various subsidiaries that operate parts of the Coinbase business, including LMX Labs, LLC dba Coinbase Derivatives Exchange, which operates the derivatives exchange. Although Plaintiff references Coinbase Global, Inc. as the nominative defendant, Plaintiff's allegations loosely refer to "Coinbase" without delineation as to which Coinbase entity it is referring. Thus, for purposes of this motion, "Coinbase" refers to Coinbase Global, Inc. or one of its operating subsidiaries. The conduct alleged by Plaintiff would fail to state a claim for tortious interference against any Coinbase entity.

investors to buy and sell futures contracts.

Plaintiff NanoLabs alleges that it is the owner of trademark rights in "Nano" which it associates with a digital currency used for microtransactions. NanoLabs does not allege that it offers a trading platform for crypto, nor does it allege that it operates a CFTC regulated derivatives exchange, because upon information and belief, it does neither.

NanoLabs does complain that its "Nano" currency has never been listed on the Coinbase crypto exchange, but that does not form the basis of a tortious interference claim. While NanoLabs alleges that it applied to be listed on Coinbase's crypto exchange, it never alleges that it fulfilled other requirements for listing, nor would it matter if it had, since there is no inherent obligation for Coinbase to list every cryptocurrency. NanoLabs' trademark claims take aim at use of the term "nano" to describe the size of futures contracts on a different platform – Coinbase's derivative exchange, but this also does not state a claim for tortious interference, even if NanoLabs' generalized allegations about a likelihood of confusion are taken as true for the sake of this motion.

Ultimately, none of Nano Labs' allegations support a cognizable legal theory for tortious interference because: NanoLabs does not plead that NanoLabs had a prospective economic relationship with any identifiable third party or that Coinbase had knowledge of a relationship; NanoLabs cannot plausibly assert that Coinbase acted with the intent to interfere with NanoLabs' unidentified economic relationship; nor has NanoLabs has set forth any facts establishing that it has been concretely harmed. NanoLabs' failure to plead economic harm in non-conclusory terms is a fatal defect under applicable law. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008); *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997).

Because NanoLabs' generalized assertions of interference and wrongdoing are not enough to state a claim for relief under *Twombly* and *Iqbal*, the fifth cause of action for intentional interference with prospective economic relations must be dismissed.

### III.    PLAINTIFF'S ALLEGATIONS[2]

According to the Complaint, NanoLabs is a digital currency company founded in 2014 that maintains a digital currency product named Nano Digital Currency. (Comp. at ¶ 4.) Nano Digital Currency was originally named RaiBlocks and was rebranded to Nano on January 31, 2018. (Comp. at ¶ 5.) NanoLabs alleges that it is the holder of the federal trademark registration for NANO under United States Trademark Registration No. 6,203,002 covering "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," registered on November 24, 2020. (Comp. at ¶ 29.)

NanoLabs does not allege that it operates a trading platform for digital or crypto currencies. Rather, it alleges that its Nano Digital Currency is traded on many exchanges other than the Coinbase crypto exchange.  (Comp. at ¶ 18.)  According to the Complaint, in September 2021, NanoLabs applied to have the Nano Digital Currency added to the Coinbase exchange platform. (Comp. at ¶ 20.) In early September 2021, Coinbase communicated to NanoLabs that in order to list Nano Digital Currency on the platform, NanoLabs would need to maintain $1 million in a custodial deposit account. (Comp., Ex. M.) NanoLabs does not allege that it ever attempted to satisfy this requirement.

Nevertheless, the Complaint brags about the alleged success of the Nano Digital Currency, asserting that on February 2, 2018, the Nano Digital Currency had a market capitalization of over $2 billion and that it is one of the top 200 digital currencies tracked by CoinMarketCap. (Comp. at ¶ 7.) According to NanoLabs, there are approximately 26 million wallets globally for the Nano Digital Currency. (Comp. at ¶ 12.)

On June 23, 2022, Coinbase submitted its Nano Bitcoin Futures Contract to the CFTC for retail investors to take contractual positions to speculate of the future price of Bitcoin, Ether, Bloomberg U.S. Large Cap Equities, and Crude Oil and such contract was made available for trading

---

[2] This section references the allegations from the Complaint that must be taken as true for purposes of this motion.  By discussing them in this motion, Coinbase does not admit the truth of the allegations.

4
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION
Case No3:23-cv-844

on June 27, 2022.  (Comp., Ex. U.) Coinbase submitted the initial listing of the Nano Ether Futures Contract to the CFTC on August 25, 2022 and such contract was made available for trading on August 29, 2022.  Contract sizes are offered in "micro" and "nano." (Comp., Ex. U.) Eliding the distinction between Coinbase's derivatives exchange described in the exhibits to its Complaint and the Nano Digital Currency, NanoLabs alleges that "[Coinbase] target[s] the same type of consumers that Plaintiff markets its digital currency to in connection with the Nano Marks—those seeking to invest in, and utilize, a digital currency."  (Comp. at ¶ 48.)   NanoLabs, however, does not allege that it operates a derivatives exchange or has ever sought regulatory approval to do so.

In support of its fifth cause of action for interference with prospective economic relations ("Interference Claim"), NanoLabs alleges only in a conclusory fashion that Coinbase "knew or should have known that launching a digital currency offering on the Coinbase Derivatives Exchange with an identical name likely will result or would have resulted in a future economic detriment to Plaintiff" and that Coinbase's conduct would "further consumer confusion and weaken the strength of Plaintiff's brand identity, particularly because the Nano Digital Currency is not listed on the Coinbase Exchange, and Defendant provides no disclaimer, distinction, or otherwise to educate consumers to this point." (Comp. at ¶¶ 82-83.) As to damages related to NanoLabs' Interference Claim, NanoLabs makes only a vague and conclusory assertion that "Plaintiff was harmed." (Comp. at ¶ 85.)

## IV.    LEGAL STANDARD

Under Federal Rule 12(b)(6), a complaint may be dismissed in whole or in part because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw on its judicial experience and common sense. *Id.* at 679. A claim has facial plausibility when the pleaded facts allow the Court to draw the reasonable inference that the defendant is liable for the

alleged misconduct. *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)) (alteration in original).

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Courts will not "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Likewise, courts will not assume that plaintiffs "can prove facts that [they have] not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Where a Complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 577 (internal punctuation omitted)).

## V.  ARGUMENT

### A.  NanoLabs' Complaint Fails to State a Cognizable Claim for Relief for Interference with Prospective Economic Relations.

To state a claim for intentional interference with prospective economic relations, NanoLabs must allege: (1) the existence of an economic relationship between NanoLabs and a third party containing the probability of future economic benefit; (2) Coinbase's knowledge of the relationship; (3) acts by Coinbase designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the acts of the Coinbase. *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Under *Twombly* and *Iqbal*, it is insufficient for NanoLabs to simply restate the elements of this claim—which is precisely what NanoLabs has done.

As noted, NanoLabs is required to set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, rather "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662.

### 1. NanoLabs Has Not Identified Any Specific Economic Relationships That Had the Probability of a Future Economic Benefit.

First, NanoLabs fails to identify any specific economic relationship that had the probability of future economic benefit. In its Complaint, NanoLabs only alleges "Defendants knew or should have known that offering Nano Bitcoin on the Coinbase Derivatives Exchange would only further consumer confusion and weaken the strength of Plaintiff's brand identity." (Comp. at ¶ 83.) NanoLabs' does not allege a single economic relationship with a third party anywhere in the Complaint. *(See generally* Comp.) To state a claim for intentional interference with prospective economic relations, NanoLabs must identify "a specific economic relationship" between it and a third party." *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1161 (N.D. Cal. 2020). "[M]erely referring to customers in general is not sufficient to show a specific prospective relationship." *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019) (*quoting Nestle USA, Inc. v. Crest Foods, Inc.*, No. LACV1607519JAKAFMX, 2017 WL 3267665, at *14 (C.D. Cal. July 28, 2017)).

Second, even if NanoLabs could identify specific prospective relationships, it fails to allege sufficient facts to show that any such relationships carried the probability of future economic benefit to it. The law precludes NanoLabs from recovering from Coinbase for overly speculative expectancies by requiring that NanoLabs sufficiently plead facts supporting that the alleged business relationship had a probability of future economic benefit to the Plaintiff. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1272–73 (N.D. Cal. 2022) (a plaintiff asserting tort of interference with prospective economic relations must show that the defendant knowingly interfered with an existing economic relationship between the plaintiff and some third party, which carries the probability of future economic benefit to the plaintiff); *Blank v. Kirwan*, 39 Cal. 3d 311, 330–31

(1985); *see also Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (failure to allege probable expectancy is fatal to plaintiff's claim because the law does not protect "speculative expectancies" only "reasonably probable" prospective relations); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1136–1137 (1990) (elements of the tort of interference with prospective economic relations include establishment of an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff).

As the court explained in *Kasparian v. Cnty. of Los Angeles*, for a tortious interference with prospective economic relations claim to lie, there must be objective "certainty" that the prospective contract would in fact have been "consummated but for the conduct of the tortfeasor. . .." 38 Cal. App. 4th 242, 261 (1995). In other words, a claim for interference with prospective economic relations protects a party's expectation that a business relationship will yield the desired benefit in the imminent future, not necessarily the mere speculative expectation that a potentially beneficial relationship will eventually arise. *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005). Allegations asserting a broad hope for an economic relationship and desire for future benefit are inadequate to satisfy the pleading requirements. *Id.* at *9. This principle was demonstrated in *Google, Inc.*, where the court dismissed plaintiffs' interference claims because plaintiffs' alleged expectation of a "future and prospective sale" from its "repeat customers" was deemed too speculative to support a claim for tortious interference with prospective business relations. *See also*, *Westside Center Associates*, 42 Cal. App. 4th at 526 (claim for intentional interference with prospective economic relationship must allege an objectively established economic relationship with sufficient probability of future economic benefit); *see also Schloss v. Sick Optic-Elec., Inc.*, No. CIV. C 96-20236 SW, 1997 WL 487428, at *7 (N.D. Cal. Aug. 8, 1997) (plaintiff lacked any "economic relationship that was reasonably likely to have been realized" from having one meeting and agreeing to exchange proposals).

Here, the Complaint only includes vague allegations of interference with unspecified economic relationships, *i.e.*, unnamed cryptocurrency consumers and prospective customers (*see* Comp. at ¶¶ 83). These allegations are plainly insufficient to plead interference with prospective

economic relations. As set forth above, the tort protects economic relationships which hold the probability of future economic benefit, not merely a hope of future transactions. *See Blank*, 39 Cal. 3d at 330 at 330–331; *see also Westside Center Associates*, 42 Cal. App. 4th at 526 (holding that existing relationship with an identifiable buyer necessary to state claim; mere expectation of a future sale was at most a hope for an economic relationship and a desire for future benefit). NanoLabs' vague mention of purported interference with unidentified consumers/unidentified prospective customers is insufficient to state any claim. *See also Twombly*, 550 U.S. at 555 (a plaintiff is required to set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").

Without specific facts giving rise to an inference of future benefit, such as, for example, a pattern of past dealing, NanoLabs cannot establish the requisite probability of future benefit. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1151 (N.D. Cal. 2019) (allegation that supplier "has long worked with AlterG" sufficient to allege probability of future economic benefit). NanoLabs' failure to allege facts supporting an inference of a future benefit is unsurprising given the fact that Coinbase and NanoLabs are not competitors and do not engage in competitive activities with each other. As alleged, NanoLabs issues a digital currency, Coinbase offers technology platforms, including a crypto exchange and CFTC registered derivatives exchange. The latter does not, inherently, divert business away from the former.

### 2. NanoLabs Does Not Sufficiently Allege Coinbase's Knowledge of Any Specific Prospective Economic Relations.

NanoLabs also does not allege any facts from which it can be plausibly inferred that Coinbase had knowledge of any specific economic relationship that had a probability of future benefit to NanoLabs. To satisfy the intent element for an interference claim, NanoLabs must allege not only "the existence of a specific economic relationship" but also "knowledge by [Coinbase] of this relationship." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997). Aside from the wholly conclusory allegation that Coinbase "knew or should have known that offering Nano Bitcoin…would only further consumer confusion and weaken the strength of

Plaintiff's brand identity" (Comp. ¶ 83), and that Coinbase "target[s] the same type of consumer that [Coinbase] markets its digital currency" to (Comp. ¶ 48), NanoLabs alleges only that Coinbase was aware of NanoLabs' Nano Digital Currency product (*id.* ¶ 25). But Coinbase's knowledge of NanoLabs' Nano Digital Currency product is not sufficient to identify any specific prospective relationships nor is Coinbase's general knowledge of the millions of current and prospective cryptocurrency consumers that exist globally.

### 3. NanoLabs Does Not Sufficiently Allege Intent

NanoLabs' failure to plausibly allege that Coinbase had knowledge of any specific prospective economic relationships also means that NanoLabs has failed to plausibly allege that Coinbase acted with the requisite intent to disrupt NanoLabs' prospective economic relationships. To satisfy the intent requirement, NanoLabs must "plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co.*, 29 Cal. 4th at 1154. NanoLabs failed to do so. Without first having any knowledge of any of NanoLabs' prospective relationships, Coinbase could not have known that interference with that prospective economic relationships was substantially certain to follow. Moreover, even if Coinbase had knowledge of any specific prospective relationships, NanoLabs has not plausibly alleged that Coinbase knew that using the term "nano" was substantially certain to interfere with NanoLabs' relationships.

### 4. NanoLabs' Harm Is Speculative and Insufficient to State a Claim.

Finally, speculative allegations concerning actual disruption and economic harm are insufficient to state a claim for interference with prospective economic relations. *See Sybersound Recs., Inc.*, 517 F.3d at 1151 (9th Cir. 2008) (affirming dismissal of intentional interference with economic relationship claim where plaintiff's alleged disruptions were conclusory claiming it "has been harmed because its ongoing business and economic relationships with Customers have been disrupted" and did not plead "for example, that it lost a contract nor that a negotiation with a [c]ustomer failed"); *Vascular Imaging Professionals, Inc.*, 401 F. Supp. 3d at 1014 (holding that general conclusory allegations regarding lost sales, absent well-plead facts in support of these

contentions, does not satisfy the pleading requirements for interference with economic relations); *Silicon Knights, Inc.*, 983 F. Supp. at 1312 (holding that "reli[ance] on general allegations of 'loss of business opportunities' with unidentified 'existing and potential clients and customers' was insufficient because plaintiff did not allege specific facts in support, for example, that "sales of a[ny] particular software ... decreased" as a result of defendant's actions"). Here, beyond vaguely asserting that "Plaintiff was harmed," NanoLabs has set forth zero facts or allegations that it has lost any customers, sales, revenue, or the like. To the contrary, NanoLabs' Complaint brags about the success of the Nano Digital Currency.

And, even if NanoLabs could allege a specific harm, NanoLabs cannot recover unless it is able to show that, except for Coinbase's interference, there was a reasonable probability that the contract or profit would have been obtained by NanoLabs. *Youst v. Longo*, 43 Cal. 3d 64 (1987); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 256 (1968) (solicitation of plaintiff's employees to work for competitor; no allegation of causal relation between loss of employees and loss of customers); *Worldwide Com., Inc. v. Fruehauf Corp.*, 84 Cal. App. 3d 803, 811 (Cal. Ct. App. 1978); *see Roth v. Rhodes*, 25 Cal. App. 4th 530, 545 (1994) (podiatrist who was denied space in defendants' medical building had no business relationship with lost future patients that could be interfered with); *Kasparian*, 38 Cal. App. 4th 242 (insufficient evidence to show that, but for actions of county supervisor, there was reasonable probability that negotiations to buy out plaintiff's interest in partnership would have concluded to his economic advantage). NanoLabs has not plead any facts showing that, but for Coinbase's use of the term "nano," NanoLabs would have benefitted from the vaguely alleged prospective economic relationship.

## VI. CONCLUSION

For the reasons set forth above, the Court should dismiss NanoLabs' Fifth Cause of Action for Interference with Prospective Economic Relations.

Dated: May 18, 2023            Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Gina Durham*

| | |
|---|---|
| 1 | GINA L. DURHAM |
| 2 | AISLINN SMALLING |
|   | KRISTINA FERNANDEZ MABRIE |
| 3 | Attorneys for Defendant |
| 4 | COINBASE GLOBAL, INC. |

12
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION
Case No3:23-cv-844

WEST\302665369.16
WEST\302665369.16