Michael L. Rodenbaugh (Cal. Bar No. 179059)
Jonathan Frost (Cal. Bar No. 273189)
RODENBAUGH LAW
548 Market Street – Box 55819
San Francisco, California 94104
Phone: (415) 738-8087
Email: mike@rodenbaugh.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANOLABS, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>COINBASE GLOBAL, INC., a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 3:23-cv-844<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. **FEDERAL REGISTERED TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**<br>2. **FEDERAL FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**<br>3. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT (Cal. Bus. & Prof. Code § 14200 *et seq.*)**<br>4. **UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200 *et seq.*)**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiff NanoLabs, Inc. ("Plaintiff"), by and through its attorneys, files this Complaint ("Complaint") against Defendant Coinbase Global, Inc., alleging as follows:

## PARTIES

1. Plaintiff is a Delaware corporation that maintains the Nano digital currency (the "Nano Digital Currency"). The Nano Digital Currency is used globally for instant, secure feeless payments. Plaintiff has a decentralized structure with physical offices and staff in London, United Kingdom, and community ambassadors, moderators, and community managers throughout the world, including in the United States.

2. Coinbase Global Inc. ("Coinbase") is a Delaware corporation, having a principal place of business at 548 Market St., San Francisco, California 94104.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, in that this action arises under Acts of Congress relating to trademarks, and the claims for California common law trademark infringement, unfair competition, and conversion under state law are joined with substantial and related claims brought under the federal trademark laws.

2. This court likewise has diversity jurisdiction under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different countries in that Plaintiff has its principal place of business in London, United Kingdom, Defendant Coinbase has its principal place of business in the state of California.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to the claim occurred in this district and that Defendant is subject to the court's subject matter and/or personal jurisdiction with respect to this action as indicated in the preceding paragraphs.

# FACTUAL BACKGROUND

4. The Nano Digital Currency was founded by Mr. Colin LeMahieu in 2014 as a decentralized, sustainable, and secure digital currency focused on addressing the inefficiencies present in existing financial systems, namely high transaction fees and latency.

5. The Nano Digital Currency was originally named RaiBlocks, and was rebranded to Nano on January 31, 2018.

6. Since at least as early as January 31, 2018, Plaintiff has used the trademark Nano in U.S. commerce in connection with its digital currency, and the Nano Digital Currency has been marketed continuously in commerce throughout the United States.

7. On February 2, 2018, the Nano Digital Currency had a market capitalization of over $2 billion.

8. The Nano Digital Currency is currently one of the top 200 digital currencies tracked by CoinMarketCap.

9. Plaintiff has expended significant resources in marketing its digital currency, and the Nano Digital Currency has been the subject of numerous third-party media and press publications since its rebranding on January 31, 2018.

10. Attached as **Exhibits A through G** are true and correct copies of the publications and press referred to in Paragraph 9.

11. Given the extensive third-party press and media coverage of the Nano Digital Currency, Plaintiff has acquired tremendous goodwill in the Nano trademark and brand.

12. There are approximately 26 million wallets globally for the Nano Digital Currency.

13. Plaintiff has an office in London, United Kingdom, has a robust online presence, and utilizes community ambassadors, moderators, and community

managers throughout the United States, as well as throughout the world (see **Exhibit H**).

14. Millions of wallet owners for the Nano Digital Currency from across the United States have successfully utilized Plaintiff's digital currency as a method of payment for goods and services.

15. Plaintiff has over 300,000 community members in its various online social network channels who are devoted to promoting and expanding the reach and adoption the Nano Digital Currency. **Exhibit I** is listing of each of these social network channels and the respective number of community members for each.

16. Plaintiff has invested significant time, effort, and expense in advertising, marketing, and promoting the Nano trademark and has enjoyed significant consumer recognition and goodwill as a result.

17. Plaintiff promotes its digital currency through its website at www.nano.org as shown in **Exhibit J**.

18. Plaintiff's digital currency is available for trading on numerous leading digital currency exchanges, as list of which is provided in **Exhibit K**.

19. In or around September 2021, Plaintiff applied to have the Nano Digital Currency listed on the Coinbase exchange trading platform ("Coinbase Exchange").

20. On September 7, 2021, Mr. Zach Segal, the Head of Listings at Coinbase, sent an email to George Coxon, Plaintiff's Director, forwarding a prior internal email discussion within Coinbase regarding a custody deposit which would be required by Plaintiff in order to have the Nano Digital Currency listed on the Coinbase Exchange. (see **Exhibit M**).

21. On September 14, 2021, the Coinbase Listing Team at Coinbase, acknowledged Plaintiff's application to have the Nano Digital Currency listed on the Coinbase Exchange via email, as shown in **Exhibit N**.

22. On September 19, 2021, Ms. Coxon participated in a virtual panel entitled "Communicating Crypto in 2021" alongside Mr. Elliot Suthers, the Corporate and Global Communications Director for Coinbase. A screenshot from this panel is provided as **Exhibit O**, and the full panel can be viewed here: https://www.youtube.com/watch?v=s_2Pdfw1niA.

23. On March 8, 2022, Ms. Allie Heinrichs, a Senior Associate on the Coinbase Listing Team, emailed Plaintiff regarding the "Earn" program offered by Coinbase, as shown in **Exhibit P**.

24. Thus, since at least October 17, 2018, various department heads and directors, as well as associates, in various departments at Coinbase were familiar with the Nano Digital Currency.

25. As the steward of the Nano Digital Currency, Plaintiff has committed years of effort and expense to develop and grow the good will associated with, and establish a reputation for integrity, efficiency, and security in, the Nano Digital Currency.

26. Plaintiff's continuous and exclusive use of the Nano trademark and the intellectual property associated therewith resulted in generating goodwill and consumer recognition in connection with the Nano Digital Currency throughout the United States.

27. Consumers therefore recognize the Nano Digital Currency as a reliable and trusted peer-to-peer digital currency that facilitates payment transactions.

## PLAINTIFF'S TRADEMARKS

28. Plaintiff is the owner of a federal trademark registration for NANO under United States Trademark Registration No. 6,203,002 covering "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," in Class 36, registered

1  on November 24, 2020 (the "002 Registration").

2      29.    A true and correct copy of the Certificate of Registration for the '002

3  Registration is attached as **Exhibit Q**.

4      30.    The application for the '002 Registration was originally filed by

5  NanoLabs, LLC, and was assigned to Mr. LeMahieu on January 4, 2018. Mr.

6  LeMahieu, as the founder of the Nano Digital Currency, and as a Director of

7  Plaintiff, gave Plaintiff a license to the '002 Registration. On September 14, 2022,

8  '002 Registration was assigned by Mr. LeMahieu to Plaintiff. (see **Exhibit R**).

9      31.    Plaintiff's '002 Registration is "prima facie evidence of the validity of

10  the registered mark and of the registration of the mark, of [Plaintiff's] ownership

11  of the mark, and of the [Plaintiff's] exclusive right to use the registered mark in

12  commerce on or in connection with the goods or services specified in the

13  certificate . . ." pursuant to 15 U.S.C. § 1057.

14      32.    Plaintiff's '002 Registration was filed before and registered before

15  any use of the word "Nano" by Defendant.

16      33.    Plaintiff also owns the following allowed, pending federal trademark

17  applications, all incorporating the word "Nano":

18            a.   Trademark Application No. 87/726,750 NANO COIN for

19                "Cryptocurrency transaction services featuring a virtual peer-to-

20                peer digital currency, incorporating cryptographic protocols,

21                operating through the Internet, and used as a method of payment

22                for goods and services," in Class 36; and

23            b.   Trademark Application No. 87/726,759 for NANO

24                CURRENCY for "Cryptocurrency transaction services featuring

25                a virtual peer-to-peer digital currency, incorporating

26                cryptographic protocols, operating through the Internet, and

27                used as a method of payment for goods and services," in Class

28                36.

34. In addition to the trademark applications and registrations referenced above, Plaintiff owns strong common law rights in and to the word "Nano" and a Nano stylized trademark for use in connection with a digital currency. A version of the Nano stylized trademark is shown below:

✕ NANO

35. Plaintiff's registered, pending, and common law trademarks are collectively referred to herein as the "Nano Marks."

36. Plaintiff further owns registered trademarks for Nano in Class 36 in Algeria, the African Intellectual Property Organization member states, Canada, Colombia, the European Union, India, Indonesia, Kazakhstan, the Republic of Korea, Monaco, Norway, New Zealand, Oman, the Russian Federation, Singapore, Ukraine, and the United Kingdom.

37. As a result of Plaintiff's extensive use of its Nano Marks, the trademark has become uniquely associated with Plaintiff.

38. The Nano Marks are inherently distinctive, and Plaintiff's use of its Nano Marks pre-dates Defendant's confusingly similar use of the word "Nano" for its Nano Bitcoin futures ("Nano Bitcoin") digital currency offering.

39. The Nano Marks are inherently distinctive, and Plaintiff's use of its Nano Marks pre-dates Defendant's confusingly similar use of the word "Nano" for its Nano Ether futures ("Nano Ether") digital currency offering.

**DEFENDANT'S INFRINGING TRADEMARKS AND ACTIVITIES**

40. Defendant launched its Nano Bitcoin digital currency offering on June 27, 2022, years after Plaintiff had been in business and had been using its Nano Marks (see **Exhibit S**).

41. Defendant launched Nano Bitcoin less than four months after Coinbase and Plaintiff last discussed the possibility of having the Nano Digital Currency listed on the Coinbase Exchange.

42. Defendant launched its Nano Ether digital currency offering on August 29, 2022, years after Plaintiff had been in business and had been using its Nano Marks (see **Exhibit T**).

43. Defendant launched Nano Ether less than six months after Coinbase and Plaintiff last discussed the possibility of having the Nano Digital Currency listed on the Coinbase Exchange.

44. Defendant had actual notice of Plaintiff's trademark rights as a result of Plaintiff's registrations and open use of its marks as early as January 31, 2018.

45. Defendant advertises its Nano Bitcoin and Nano Ether offerings through www.coinbase.com/derivatives as shown in **Exhibit U** (the "Coinbase Derivatives Exchange").

46. Defendant, in its marketing materials, refers to its offerings as Nano, Nano Bitcoin, Nano Bitcoin futures, Nano Ether, Nano Ether futures, and Coinbase Nano Bitcoin Futures (collectively, the "Nano Bitcoin and Nano Ether Marks") as shown in **Exhibit U**.

47. Defendant's Nano Bitcoin and Nano Ether offerings are derivative products based on the digital currencies Bitcoin and Ether, respectively, which are identical or highly similar types of offerings as Plaintiff's digital currency.

48. Defendant targets the same type of consumers that Plaintiff markets its digital currency to in connection with the Nano Marks—those seeking to invest in, and utilize, a digital currency.

49. Notwithstanding Defendant's actual or at least constructive notice of Plaintiff's rights, Defendant has adopted trademarks that are identical, and where not identical, are confusingly similar to Plaintiff's.

50. Plaintiff and Defendant's marks are compared below:

| Plaintiff's Trademark Use | Defendant's Trademark Use |
|---|---|
| (i) Nano | (i) Nano, (ii) Nano Bitcoin, (iii) Nano Bitcoin futures, (iv) Coinbase Nano Bitcoin Futures, (v) Nano Ether, (vi) Nano Ether futures |
| Earliest use date: 2018 | Earliest use date: 2022 |

51.  Defendant did not begin using the Nano Bitcoin and Nano Ether Marks on or in connection with any goods or services until June 27, 2022, more than four and a half years after Plaintiff had launched its Nano Marks and began establishing related goodwill in the Nano Digital Currency.

52.  In fact, since the time Defendant began using the Nano Bitcoin and Nano Ether Marks on June 27, 2022 on its own Coinbase Derivatives Exchange, Defendant willfully expanded visibility and access to its Nano Bitcoin and Nano Ether offering by allowing various third-party retail brokers and clearing firms to list the Nano Bitcoin – namely EdgeClear, Ironbeam, NinjaTrader, Optimus Futures, Stage 5, and Tradovate, ABN AMRO, ADMIS, Advantage Futures, Dorman Trading, ED&F Man, and Wedbush (see **Exhibits S & T**).  Such aggressive expansion exposes a significant number of consumers to Nano Bitcoin and Nano Ether, who are likely to believe that Defendant's offerings originate from, or are affiliated or associated with Plaintiff, or are otherwise sponsored or endorsed by Plaintiff.

53.  Defendant will likely continue to aggressively market its Nano Bitcoin and Nano Ether offerings.  In July 2022, third-party media reported that Defendant "saw a 'surge in activity ever since retail broker partners started marketing/ promotional efforts last week,' according to an email sent out by Coinbase's sales team." (see **Exhibit V**).

54. Defendant's offering of digital currencies so similar to, and under an identical mark, has harmed Plaintiff.

55. Defendant is not in any way affiliated with Plaintiff, has used the Nano Marks without authorization, without Plaintiff's consent, and has come under severe regulatory scrutiny in the United States and elsewhere.  Recently, the U.S. Securities and Exchange Commission has filed charges against Defendant, alleging that Defendant has operated as an unregulated securities exchange since 2019.  SEC Chair Gary Gensler said Coinbase's alleged failures "deprive investors of critical protections" that help prevent fraud and manipulation.  These charges have been widely reported upon by virtually every major mainstream and industry press outlet.  Therefore, Defendant's use of NANO trademarks dilutes Plaintiff's valuable NANO trademarks by tarnishing their reputation in the marketplace.

56. Defendant's continued use of the Nano Marks and branding efforts related to Nano Bitcoin and Nano Ether will confuse consumers.  Defendant's continued efforts to trade off Plaintiff's goodwill will continue to cause Plaintiff harm.

## FIRST CAUSE OF ACTION

**(Federal Trademark Infringement [Lanham Act, 15 U.S.C. § 1114)])**

57. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 56, inclusive, and incorporates them as though fully set forth by this reference herein.

58. Defendant's use in commerce of words, terms, names, symbols, or devices, or any combination thereof, consisting of or including the word "Nano", and/or derivatives thereof constitutes a colorable imitation of Plaintiff's Nano Marks, and is likely to cause confusion, or to cause mistake, or to deceive.  As such, Defendant's use of the Nano Bitcoin and Nano Ether Marks constitutes an infringement of Plaintiff's trademarks.

59. Defendant's infringing actions are intentional and willful, as Defendant first adopted its Nano Bitcoin and Nano Ether Marks with ample actual notice of Plaintiff's Nano Marks, and expanded its uses of the Nano Bitcoin and Nano Ether Marks after acquiring even more ample actual knowledge of Plaintiff's Nano Marks.

60. Defendant's acts of infringement have caused and are causing actual damage and irreparable harm to Plaintiff, for which legal remedies are inadequate. Therefore, in addition to monetary remedies, Plaintiff seeks injunctive relief to permanently bar Defendant from use of any Nano-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and any confusingly similar marks in commerce in connection with its products, services, or offerings.

61. Defendant's intentional actions are willful and render this an exceptional case, further entitling Plaintiff to recovery of treble damages, attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**(False Designation of Origin [Lanham Act, 15 U.S.C. § 1125(a)])**

62. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 61, inclusive, and incorporates them as though fully set forth by this reference herein.

63. In addition to its federally registered trademarks, Plaintiff is the owner of common law rights in the trademark "Nano" and the Nano Marks.

64. Defendant's use in commerce of words, terms, names, symbols, or devices, or any combination thereof, consisting of or including confusingly similar "Nano"-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and/or variations thereof is likely to cause confusion, or to cause mistake, or to deceive as to a non-existent affiliation, connection, or association between Defendant and Plaintiff.

65. Defendant's use of the "Nano"-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and/or variations thereof is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

66. Defendant's use of such Nano-formative marks in advertising and branding is a blatant attempt to capitalize on the goodwill established by Plaintiff.

67. Defendant's infringing actions are intentional and willful, as Defendant adopted "Nano"-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and/or variations thereof with ample actual notice of Plaintiff's use and registration of the Nano Marks, and then expanded its uses of such infringing with further ample actual knowledge of Plaintiff's Nano Marks.

68. Defendant's acts of infringement have caused and are causing actual damage and irreparable harm to Plaintiff, for which legal remedies are inadequate. Therefore, in addition to monetary remedies, Plaintiff seeks injunctive relief to permanently bar Defendant from use of "Nano"-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and/or any variations thereof in commerce in connection with Defendant's products, services, or offerings.

69. Defendant's intentional actions are willful and render this an exceptional case, further entitling Plaintiff to recovery of trebled damages and its attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (California Common Law Trademark Infringement)

70. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 69, inclusive, and incorporates them as though fully set forth by this reference herein.

71. As alleged in detail above, Defendant's use of the "Nano"-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and/or variations thereof in the state of California constitutes an infringement of Plaintiff's trademark rights. Moreover, Defendant's willful conduct was and is committed knowingly and willfully, thereby justifying an award of exemplary damages in addition to Plaintiff's actual damages.

## FOURTH CAUSE OF ACTION

### (Unfair Business Practices [Cal. Bus. & Prof. Code § 17200 *et seq.*])

72. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 71, inclusive, and incorporates them as though fully set forth by this reference herein.

73. As alleged in detail above, Defendant's use and advertising of the "Nano"-formative trademarks, including without limitation the Nano Bitcoin and Nano Ether Marks, and/or variations thereof in the state of California without authorization, constitutes unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code Section 17200 *et seq*.

74. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's unfair competition in the form of damage to its goodwill, lost consumer adoption, loss of its intellectual property and other actual damages.

75. The harm to Plaintiff and to members of the general public far outweighs the utility of Defendant's business practices.

76.    The unlawful, unfair, and/or fraudulent business practices of Defendant, as described in this Complaint, present a continuing threat to members of the public in that they are likely to cause confusion as to the source of Defendant's digital currency offering in that the general public is likely to believe that Defendant's Nano-formative digital currency offerings originate from, or are affiliated or associated with Plaintiff, or are otherwise sponsored or endorsed by Plaintiff.

77.    As a direct and proximate result of Defendant's wrongful acts as alleged in this Complaint, Defendant obtained unlawful profits to the detriment of Plaintiff.

78.    Unless restrained, Defendant will continue the acts and conduct set forth in this cause of action, to Plaintiff's great and irreparable injury, for which damages will not afford adequate relief.  Plaintiff is therefore entitled to an injunction prohibiting Defendant's wrongful acts.

79.    Defendant committed the wrongful acts willfully, intending to gain business and a share of the market by riding on Plaintiff's reputation and good will.  Defendant's conduct justifies an award of exemplary damages.

80.    Upon proof, Plaintiff is entitled to recover its costs, including attorneys' fees, under California Code of Civil Procedure Section 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court enter judgment against Defendant as follows:

1.    For an award of actual damages according to proof;

2.    For disgorgement of Defendant's profits;

3.    For reasonable attorneys' fees and costs of suit;

4.    For pre-judgment interest on all amounts claimed as permitted by law;

5.    For an order of permanent injunction, enjoining Defendant from using any "Nano"-formative trademarks, including without limitation the Nano Bitcoin

1  and Nano Ether Marks, tradenames, or domain names, and/or any confusingly
2  similar variations thereof, in connection with the offering, sale, exchange, or trading
3  of any digital currency products.

4      7.    For an order impounding for destruction all products, brochures,
5  marketing materials, and other articles bearing any "Nano"-formative trademarks,
6  including without limitation the Nano Bitcoin and Nano Ether Marks, tradenames,
7  or domain names, and/or any confusingly similar variations thereof;

8      8.    For an order requiring Defendant to engage in corrective advertising to
9  restore, to the fullest extent possible, the value of NanoLabs' intellectual property;

10      9.    For treble and/or punitive damages as permitted by law; and,

11      10.    For such other, further, and different relief as the Court may deem
12  proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues raised in the Complaint.

Dated:  June 8, 2023

BY: /s/ *Mike Rodenbaugh*
Mike Rodenbaugh
RODENBAUGH LAW
548 Market Street – Box 55819
San Francisco, California 94104
Phone:  (415) 738-8087
Email:  mike@rodenbaugh.com