GINA L. DURHAM (SBN 295910)
gina.durham@us.dlapiper.com
AISLINN SMALLING (SBN 335911)
aislinn.smalling@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105
Tel: 415-836-2506
Fax: 415-659-7333

KRISTINA FERNANDEZ MABRIE
(SBN 318315)
kristina.fernandezmabrie@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Tel.: (310) 595-3000

*Attorneys for Defendant*
COINBASE GLOBAL, INC.

Michael L. Rodenbaugh (California Bar No. 179059)
Jonathan Frost (California Bar No. 273189)
RODENBAUGH LAW
548 Market Street – Box 55819
San Francisco, California 94104
Phone: (415) 738-8087
Email: mike@rodenbaugh.com

*Attorneys for Plaintiff,*
NANOLABS, INC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANOLABS, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>   v.<br><br>COINBASE GLOBAL, INC., a Delaware corporation<br><br>                Defendant. | Case No. 3:23-cv-00844-JCS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Complaint Filed: February 24, 2023 |

1

Pursuant to F.R.C.P. 26(f) and Civil L.R. 16-9, the parties hereby jointly submit this Case Management Statement.

**1.     Jurisdiction and Service:** Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question under 28 U.S.C. § 1338(a), and the Lanham Act, 15 U.S.C. § 1125 *et seq.*, giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States.  Pendent jurisdiction exists over the state law claims because the state law claims derive from a common nucleus of operative facts as the federal claim.  Defendant has consented to personal jurisdiction in this judicial district for purposes of this case and has been served.

**2.     Facts:**

**PLAINTIFF'S STATEMENT**

Since at least as early as January 31, 2018, Plaintiff continuously has used the trademark Nano in U.S. commerce in connection with its digital currency products.  Plaintiff has expended significant resources in marketing its digital currency, and the Nano Digital Currency has been the subject of numerous third-party media and press publications.

Plaintiff's digital currency is available for trading on numerous leading digital currency exchanges. There are approximately 26 million wallets globally for the Nano Digital Currency.  Millions of wallet owners for the Nano Digital Currency from across the United States have successfully utilized Plaintiff's digital currency as a method of payment for goods and services.

In addition, Plaintiff has over 300,000 community members in its various online social network channels who are devoted to promoting and expanding the reach and adoption the Nano Digital Currency.  Plaintiff further promotes its digital currency through its website at www.nano.org.  Plaintiff is the owner of a

federal trademark registration for NANO -- Registration No. 6,203,002 – covering "Cryptocurrency transaction services featuring a virtual peer-to-peer digital currency, incorporating cryptographic protocols, operating through the Internet, and used as a method of payment for goods and services," in Class 36, registered on November 24, 2020 (the "002 Registration").[1]/[2]

Plaintiff has committed years of effort and expense to develop grow the good will associated with, an establish a reputation for integrity, efficiency, and security in, the Nano Digital Currency. As a result of Plaintiff's extensive use of its Nano Marks, the trademark has become uniquely associated with Plaintiff. Indeed, Plaintiff has invested vast amounts of time, effort, and expense in advertising, marketing, and promoting the Nano trademark and, as a result, has earned tremendous consumer recognition and goodwill in the Nano trademark and brand.

On October 17, 2018, Defendant Coinbase Global Inc. sent an unsolicited email to Plaintiff stating: "Our team is researching for new coins and tokens for listing on our exchange and we would like to propose you adding NANO for trading on the platform." In early September 2021, Plaintiff applied to have the Nano Digital Currency listed on the Coinbase exchange trading platform. On September 7, 2021, Mr. Zach Segal, the Head of Listings at Coinbase, sent a reply email to George Coxon, Plaintiff's Director, describing deposit requirements for listing NANO on the Coinbase exchange. On September 14, 2021, the Coinbase Listing Team at Coinbase, acknowledged via email the Plaintiff's application to have the Nano Digital Currency listed on the Coinbase exchange. On September 19, 2021, Ms. Coxon participated in a virtual panel entitled "Communicating

---

[1] Plaintiff also owns two federal trademark applications, which are allowed for registration pending proof of use:  NANO COIN and NANO CURRENCY.

[2] In addition to the trademark applications and registrations referenced above, Plaintiff owns strong common law rights in and to the word "Nano" and a Nano stylized trademark for use in connection with a digital currency.

Crypto in 2021" alongside Mr. Elliot Suthers, the Corporate and Global Communications Director for Coinbase.  On March 8, 2022, Ms. Allie Heinrichs, a Senior Associate on the Coinbase Listing Team, emailed Plaintiff regarding the "Earn" program offered by Coinbase.  Thus, since at least October 17, 2018, various department heads and directors, as well as associates, in various departments at Coinbase were not only familiar with the Nano Digital Currency, but had done in depth review of it. Defendant also maintains at least two webpages discussing the Nano Digital Currency, including one page describing how to buy it.

On June 27, 2022, Defendant launched its Nano Bitcoin digital currency offering, more than four years after Plaintiff began using its Nano Marks, and nearly four years after Defendant acknowledged same.  Indeed, the launch came less than four months after Defendant and Plaintiff last discussed the possibility of having the Nano Digital Currency listed on the Coinbase exchange.  Two months later, on August 29, 2022, Defendant launched its Nano Ether digital currency offering.  Defendant advertises its Nano Bitcoin and Nano Ether offerings through its website at coinbase.com, and otherwise.  Defendant, in its marketing materials, associate their digital currency offerings with trademarks including Nano, Nano Bitcoin, Nano Bitcoin futures, Nano Ether, Nano Ether futures, and Coinbase Nano Bitcoin Futures.

Defendant's Nano digital currency offerings are derivative products based on the digital currencies Bitcoin and Ether, respectively, which are identical or highly similar types of offerings as Plaintiff's digital currency. Defendant targets the same type of consumers as Plaintiff—those seeking to invest in and/or utilize a digital currency.

Since the time Defendant began offering the Nano digital currency products on the Coinbase exchange, Defendant has willfully expanded visibility and access to those offerings by allowing many various third-party retail brokers and clearing

firms to list the Defendant's Nano digital currency products.  Such aggressive expansion exposes a huge number of digital currency consumers to Defendant's Nano digital currency products.  Many of those consumers are likely to believe that Defendant's offerings originate from, or are affiliated or associated with Plaintiff, or are otherwise sponsored or endorsed by Plaintiff.  In addition to willfully infringing Plaintiff's trademarks, the Defendant thereby has unfairly competed with Plaintiff, and has interfered with Plaintiff's prospective economic advantage as a result of its dealings with retail brokers, clearing firms, and digital currency exchanges.

**DEFENDANT'S STATEMENT**

Defendant Coinbase Global, Inc. was incorporated as a Delaware corporation to act as the holding company of several Coinbase subsidiaries.  One such subsidiary now includes LMX Labs, LLC dba Coinbase Derivatives Exchange which operates a derivatives exchange. Coinbase acquired LMX, Labs, LLC dba FairX, a CFTC-registered contract market (a "DCM") in February 2022. Prior to the acquisition, LMX Labs, LLC listed futures contracts referencing the SuperTech Index, Crude Oil and Bloomberg U.S. Large Cap Equities. These contracts were offered in "micro" and "nano" size, allowing investors to choose the appropriate-sized contract to speculate on the future of the underlying reference asset.

Following the acquisition, LMX Labs, LLC was rebranded as Coinbase Derivatives Exchange.  As a DCM, this entity facilitates the trading of futures contracts by market participants. And, Coinbase Derivatives Exchange continues to use terms like "micro" and "nano" to describe the size of futures contracts.

Plaintiff NanoLabs claims that this use of "nano" to describe the size of futures contracts infringes NanoLab's purported trademark rights in "Nano" for a cryptocurrency.

Defendant Coinbase asserts that use of a descriptive term like "nano" for its commonly understood meaning is a classic fair use for which a complete affirmative defense exists under the Lanham Act. Further, even if this use could be considered a "trademark use" as opposed to a descriptive "fair use," NanoLabs cannot establish a trademark infringement because the retail market participants in the Coinbase Derivative Exchange are not likely to confuse that exchange's reference to nano as associated with or emanating from NanoLabs, who is not a CFTC-registered contract market and does not have the regulatory approval which would allow it to offer futures through a derivatives market.

Finally, Coinbase has alleged that NanoLabs has certain critical vulnerabilities associated with the trademark rights that it asserts, including that "nano" does not function as a proper trademark for NanoLabs' goods/services and that the associated trademark filings were passed to NanoLabs in violation of the anti-trafficking rule under the Lanham Act.

Coinbase denies the bulk of the factual allegations and all of the legal assertions made by NanoLabs in its Complaint and in Plaintiff's Statement immediately preceding this statement. Coinbase asserts the following affirmative defenses in response to Nanolabs' claims: (1) failure to state a claim; (2) "nano" is descriptive; (3) fair use; (4) unclean hands; (5) acquiescence; and (6) failure to mitigate. Coinbase seeks a dismissal of Nanolabs' action in its entirety, with prejudice, the award of attorney's fees and costs, and any other relief that the Court deems proper.

Finally, Coinbase filed a partial motion to dismiss seeking to dispose of Nanolab's claim for interference with prospective economic advantage because it fails to state a claim upon which relief can be granted. In response, NanoLabs filed an Amended Complaint, removing this claim from its allegations.

**3. Legal Issues:**

**PLAINTIFF'S STATEMENT:**

A. Whether Defendant has infringed Plaintiff's NANO Marks, under federal and/or California law.

B. Whether Defendant has engaged in unfair competition under California law.

C. What amount of damages adequately compensates Plaintiff for such willful infringement, unfair competition, and interference.

D. Whether a permanent injunction should issue against Defendant.

E. Whether Plaintiff should be awarded its reasonable attorneys' fees in this matter, under California and/or federal law.

**DEFENDANT'S STATEMENT:**

A. Whether the use of "nano" to describe the size of futures contracts is fair use.

B. Whether there is a likelihood of consumer confusion between the accused use of "nano" in connection with futures contracts on a derivatives exchange, on the one hand, and Plaintiff's use of nano in the issuance of a cryptocurrency, on the other hand.

C. Whether Plaintiff's trademark is descriptive under US and California trademark law.

D. Whether Plaintiff's trademark registration and applications are invalid under the anti-trafficking rule, Section 10(a)(1) of the Lanham Act, 15 U.S.C. § 1060(a)(1).

E. Whether Defendant should be awarded its reasonable attorneys' fees in this matter, under California and/or federal law.

**4. Motions:** Defendant filed a Motion to Dismiss Plaintiff's Fifth

Cause of Action for Interference with Prospective Economic Relations and requested a hearing on July 14, 2023. In response, Plaintiff amended its Complaint, rendering this Motion moot. Additionally, either party may file a Motion for Summary Judgment as to some or all claims. Defendant also reserves the right to file a motion to bifurcate some or all of the issues for trial.

**5.** **Amendment of Pleadings:** None anticipated at this time.

**6.** **Evidence Preservation:** The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred pursuant to Fed.R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Each party has instituted a litigation hold, and proposes to produce responsive documents in searchable .pdf format or otherwise as mutually agreed.

**7.** **Disclosures:** The parties have agreed to exchange Initial Disclosures thirty days from the date that Defendant responds to the Complaint.

**8.** **Discovery:** The parties do not foresee any extraordinary discovery issues.

**9.** **Class Actions:** The matter is not a class action.

**10.** **Related Cases:** There are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

**11.** **Relief:**

Plaintiff prays for judgment in its favor and against Defendant as follows:

    A.    A judgment on all claims, finding that Defendant is willfully infringing upon Plaintiff's NANO Marks, unfairly competing with Plaintiff, and interfering with Plaintiff's prospective economic relations;

    B.    A permanent injunction requiring Defendant and anyone acting

in concert with Defendant from promoting, using or registering any NANO-formative mark in connection with digital currency products or technologies;

C. An accounting of Defendant's revenues and profits from sales of the Defendant's infringing digital currency products;

E. An award of damages sustained as a result of Defendant's willful and wrongful actions;

F. An award of reasonable attorneys' fees and expenses, and costs of this exceptional case; and,

G. Such other and further relief as the Court may deem just and proper.

Counterclaimant/Defendant prays for judgment in its favor and against Counterdefendant/Plaintiff as follows:

A. A judgment declaring that NANO is descriptive for financial services that are small in size or have an intended use that is small in size, and therefore does not function as a trademark for NanoLabs;

B. An order directing the Director of the United States Patent & Trademark Office to cancel U.S. Registration number 6,203,002, because the mark is descriptive, and does not have the required secondary meaning;

C. An order directing the Director of the United States Patent & Trademark Office to cancel U.S. Registration number 6,203,002, because the mark was assigned prior to filing at Statement of Use, so the registration is invalid.

D. A judgment finding that U.S. trademark application numbers 87,726,750, 87,726,759, and 87,760,251 are invalid under the Anti-Trafficking Rule because these applications were assigned as intent

to use applications, before the prior owner filed any Statements of Use.

E. An award of Coinbase's attorney's fees and costs.

F. A judgment in its favor as to all of Plaintiff's claims, that Plaintiff takes nothing by reason of its Complaint, inclusive of all relief requested therein, and for such other and further relief as the Court deems just and proper.

12. **Settlement and ADR:** The parties will comply with L.R. 3-5, and agree to participate in a mediation or settlement conference.

13. **Consent to Magistrate Judge For All Purposes:** The parties have consented to have Magistrate Judge Spero conduct all further proceedings including trial and entry of judgment.

14. **Other References:** The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. **Narrowing of Issues:** Plaintiff has filed a First Amended Complaint, removing its tortious interference claim.

16. **Expedited Trial Procedure:** Not applicable.

17. **Scheduling:**

| EVENT | PROPOSED DEADLINE |
| --- | --- |
| Rule 26(a)(1) Initial Disclosures | June 17, 2023 |
| Last Day to Complete ADR | November 3, 2023 |
| Last Day to Amend Pleadings | November 10, 2023 |
| Fact Discovery Closes | December 22, 2023 |
| Opening Expert Reports Served | January 19, 2023 |
| Rebuttal Expert Reports Served | February 16, 2023 |
| Close of Expert Discovery | March 29, 2024 |
| Dispositive Motions Deadline | April 26, 2024 |

**18.** **Trial:** Plaintiff has requested a jury trial. The parties expect the trial to last 5 court days or fewer. The parties request a May or June 2024 trial date.

**19.** **Disclosure of Non-party Interested Entities or Persons:** The parties have each filed the required disclosure.

**20.** **Professional Conduct:** All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. The parties do not at this time anticipate other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

Respectfully submitted,

**RODENBAUGH LAW**

Dated: July 7, 2023

By: _____
Michael L. Rodenbaugh (SBN 179059)
RODENBAUGH LAW
548 Market Street - Box 55819
San Francisco, CA 94104
(415) 738-8087
mike@rodenbaugh.com

*Attorneys for Plaintiff*

Dated: July 7, 2023      By: */s/ Gina Durham*
Gina Durham
Aislinn N. Smalling
Kristina M. Fernandez Mabrie
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
(415) 836-2500
gina.durham@us.dlapiper.com,
aislinn.smalling@us.dlapiper.com,
kristina.fernandezmabrie@us.dlapiper.com

*Attorneys for Defendants*

11

JOINT CASE MANAGEMENT STATEMENT
Case No3:23-cv-844

**<u>ATTESTATION</u>**

Pursuant to Civil Local Rule 5-1(h)(3) regarding signatures, Gina Durham hereby attests that concurrence in the filing of this document has been obtained.

Dated: July 7, 2023                     By: */s/ Gina Durham*
                                                    GINA DURHAM